**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ANGELIA FOWLER,

      Plaintiff,

vs.                                   Civil Action No. 8:21-cv-01038-WFJ-AAS

EXPERIAN INFORMATION
SOLUTIONS, INC., and
PREFERRED COLLECTION AND
MANAGEMENT SERVICES, INC.,

      Defendants.                         /

**MOTION FOR SUMMARY JUDGMENT OF THE DEFENDANT**
**PREFERRED COLLECTION AND MANAGEMENT SERVICES, INC.,**
**<u>PURSUANT TO RULE 56(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE</u>**

COMES NOW the Defendant, PREFERRED COLLECTION AND MANAGEMENT

SERVICES, INC., ("PCMS") by and through its undersigned counsel and pursuant to Rule 56(a)

of the Federal Rules of Civil Procedure and files this its motion for summary judgment as to the

complaint (Doc. # 1) of the Plaintiff, ANGELIA FOWLER, ("Fowler").

**Background Facts:**

1.      On April 30, 2021, Fowler filed suit against Defendants, EXPERIAN INFORMATION

        SOLUTIONS, INC. ("Experian") and PCMS for alleged violations of the Fair Credit

        Reporting Act (15 U.S.C. §§1681-1681x) (FCRA) related to credit reporting of past due

        accounts by PCMS to Experian.

2.      Counts I, II and III, relate to Experian only and will not be addressed by PCMS directly in

        this motion.

-1-

3.      Count IV, entitled "Violation of 15 U.S.C. §1681s-2(b)" alleges a claim by Fowler against PCMS for: a) inaccurately reporting 13 accounts as accounts belonging to Fowler, b) failing to properly and fully investigate Fowler's disputes, c) failing to fully review all relevant information, d) by modifying and failing to accurately report the actual date of delinquency; e) failing to correctly report results of an accurate investigation to consumer reporting agencies, and f) failing to permanently and lawfully correct its own internal records to prevent re-reporting of inaccurate information to credit reporting agencies. See (Doc. # 1, page 6, ¶ 38).

4.      Fowler alleges that based upon these violations she suffered the following injuries: a) loss of credit, b) loss of ability to purchase and benefit from credit, c) increased insurance rates, d) increased interest rates and the mental and emotional pain, anguish, humiliation and embarrassment of credit denials.  Id. at ¶ 39.

5.      Fowler alleges that she is a consumer,[1] and that the alleged violations by PCMS were during the course of PCMS's reporting of medical debts to Experian.[2]  The complaint alleges that  "[o]n or around May 18, 2019,[3]  Plaintiff pulled a credit report from Experian and found that Experian was inaccurately reporting at least 13 different accounts associated with Defendant PCMS ('the PCMS Account') as belonging to her."[4]

---

[1] See (Doc. #1, pages 1-2, ¶ 4).

[2] See (Doc. #1, page 2, ¶ 12).

[3] There was no evidence ever produced that Fowler disputed the 13 accounts on May 18, 2019.  The thirteen accounts appear to have been disputed by Fowler earlier, May 7, 2019, See Appendix E.  For example, the ACDVs.

[4] See (Doc. #1, page 2, ¶ 11).

6.    Fowler alleges that she was never treated by Incare Medical Services, Inc.  *See* (Doc. #1, page 2, ¶ 12), the entity listed on the credit report as the original creditor.  *See Appendix E (Deposition of Experian representative Christina Hamilton*, Exhibit "2" thereto) [5]

7.    Fowler alleges that on May 18, 2019, she sent a written dispute directly to both Experian and PCMS. *See* (Doc. #1, page 3, ¶¶ 13-15).

8.    Fowler alleges that PCMS never responded to her written dispute but Experian did. However Fowler alleges that Experian responded and continued to report the accounts. *See* (Doc. #1, page 3, ¶¶ 14, 16).

9.    Preferred was a third-party debt collector for Incare Services, Inc., which was a medical billing company on the following accounts for the named Providers:

| Account Client Account # | Account Last Charge Date | Charge Detail Service Provider Name |
|---|---|---|
| XXX844 | 11/15/2015 | Shah, Sheela R |
| XXX915 | 11/16/2015 | Hoosien, Ebrahim |
| XXX059 | 11/17/2015 | Hoosien, Ebrahim |
| XXX225 | 11/18/2015 | Hoosien, Ebrahim |
| XXX333 | 11/19/2015 | Hoosien, Ebrahim |
| XXX480 | 11/20/2015 | Hoosien, Ebrahim |
| XXX646 | 11/21/2015 | Robinson, Domain |
| XXX472 | 11/22/2015 | Robinson, Domain |
| XXX600 | 11/23/2015 | Shah, Sheela R |
| XXX799 | 11/24/2015 | Shah, Sheela R |
| XXX732 | 11/25/2015 | Shah, Sheela R |
| XXX822 | 11/26/2015 | Shah, Sheela R |
| XXX982 | 11/27/2015 | Ahmed, Jahangir |
| XXX102 | 11/28/2015 | Kumar, Mukesh |
| XXX320 | 11/30/2015 | Ahmed, Jahangir |
| XXX371 | 12/1/2015 | Ahmed, Jahangir |

---

[5] Labeled Exh_2_Experian_Rep_Hamilton_depo_redacted. The references to Incare Medical Services, Inc. is listed on each of the 28 ACDVs in this exhibit.

| | | | |
|---|---|---|---|
| 1 | XXX428 | 12/2/2015 | Ahmed, Jahangir |
| 2 | XXX505 | 12/3/2015 | Ahmed, Jahangir |
| 3 | XXX671 | 12/4/2015 | Jumapao, Azucena |
| 4 | XXX685 | 12/5/2015 | Jumapao, Azucena |
| 5 | XXX693 | 12/6/2015 | Jumapao, Azucena |
| 6 | XXX758 | 12/7/2015 | Jumapao, Azucena |
| 7 | XXX964 | 12/8/2015 | Shah, Sheela R |
| 8 | XXX321 | 12/10/2015 | Kumar, Mukesh |
| 9 | XXX412 | 12/11/2015 | Kumar, Mukesh |
| 10 | XXX315 | 12/12/2015 | Kumar, Mukesh |
| 11 | XXX519 | 12/13/2015 | Kumar, Mukesh |
| 12 | XXX584 | 12/14/2015 | Kumar, Mukesh |

14  *See Appendix A Defendant PCMS's Answers to Plaintiff's Interrogatories (Answer to*
15  *Interrogatory # 8).*

17  10.  PCMS provides in its Answer to Fowler's Interrogatory # 4,[6] a chronology according to

18  its business records.  PCMS's interrogatory answer #4 reflects that on December 12,

19  2016, the thirteen accounts at issue ("the accounts") were assigned to PCMS by Incare

20  Medical Services, Inc.[7] *See Statement of Undisputed Facts of Defendant Preferred*

21  *Collection and Management* Services Inc. ¶ 2.  It then mailed its initial letters to Fowler

22  on each of the accounts on December 27, 2016.[8] *Statement of Undisputed Facts of*

---

[6]  *Appendix A Defendant PCMS's Answers to Plaintiff's Interrogatories* #4.

[7]  *See Appendix D, Deposition of Matthew Keifer*, pg 11, lines 4-6) Mr. Keifer testified that Incare Medical Services, Inc. was the billing company for a group of "rounding physicians", *see Appendix D*, Deposition of Matthew Keifer, pg 11, lines 12 through 24, page 12, lines 1 though 3, and page 19, lines 2-10) which he described as doctors that made rounds for the treating doctor while the "rounding physician" was present at the facility.  There were a total of 28 accounts, *see Statement of Undisputed Facts of Defendant Preferred Collection and Management* Services Inc. ¶ 7, but only 13, were disputed with Experian on October 26, 2017, May 8, 2019.  Only two were disputed on February 12, 2021.  References to the accounts will refer to the 13 accounts.  PCMS's dates differ somewhat from Experian because the business records of PCMS are based upon when it was notified and not necessarily when the consumer submitted the dispute to Experian.

[8]  *See Appendix D, Deposition of Matthew Keifer*, pg 13, lines 4-14.

-4-

1    *Defendant Preferred Collection and Management* Services Inc. ¶ 4. It also attempted to

2    reach Fowler via telephone in 2017 on the following dates: January 25, 26, 27, 30 and

3    August 7.[9]  *Id.*  Fowler never answered any of the calls attempted, nor did she respond to

4    the letters sent in December 2016.[10]  The 13 account(s) were credit reported in beginning

5    May 2017.  *Statement* of Undisputed Facts of Defendant Preferred Collection and

6    Management Services Inc., ¶ 6.  On October 26, 2017, PCMS was notified by Experian

7    that Fowler was disputing thirteen of the accounts reported.  Id.  All thirteen accounts

8    were disputed "001" "Not His/Hers", *see Statement of Undisputed Facts of Defendant*

9    *Preferred*  Collection and  Management Services Inc.  ¶ 10, with no further comment or

10   documentation.  On November 9, 2017, an employee of PCMS trained to respond to

11   ACDV[11] credit disputes, Odalys Diaz, received the ACDVs and responded to disputes

12   after reviewing PCMS's internal records to confirm that Fowler's information matched the

13   credit file.   Statement of Undisputed Facts of Defendant Preferred Collection and .

14   Management Services Inc., ¶ 9.   The disputes were through the electronic system referred

15   to as e-OSCAR.[12]  The PCMS computer system had an overlay called Sonnet at the time

16   which showed two things: 1) what was disputed per the ACDV and 2) what was in

---

[9] *Appendix A Defendant PCMS's Answers to Plaintiff's Interrogatories* #4, see also

[10] *Id.*

[11] ACDV is the acronym for **A**utomated **C**onsumer **D**ispute **V**erification
seehttps://d1vy0qa05cdjr5.cloudfront.net/bfb36feb-d1d7-4733-9b52-a7d5ed7eedac/Reference%2
0Cards/ACDV_Responders_Responding_to_ACDVs_RC.pdf

[12] The website https://www.e-oscar.org defines the Acronym e-OSCAR as the "**O**nline
**S**olution for **C**omplete and **A**ccurate **R**eporting."

1    PCMS's computer system (ACE).  Ms. Diaz personally reviewed what had been presented

2    in the ACDV with what PCMS had in its system. Odalys Diaz compared and confirmed

3    the information in the credit file matched what was in PCMS's file which it received from

4    Incare Medical Systems, Inc.  Odalys Diaz repeated the review on each of the 13 ACDV

5    disputes received  from the bureaus on November 9, 2017.[13] PCMS provided Experian

6    with the results of its investigation of the "001 Not His/Hers" investigation and confirmed

7    that the information matched what was being reported.  *Statement of Undisputed Facts of*

8    *Defendant Preferred Collection and Management* Services Inc. ¶ 9.  On May 8, 2019 Ms.

9    Diaz again received e-OSCAR disputes (ACDVs) from Experian which also claimed a

10    HIPAA violation, specifically stating that she did not give permission to exchange her

11    PHI. *Statement of Undisputed Facts of Defendant Preferred Collection and Management*

12    *Services Inc.* ¶ 14,  The account continued to be marked disputed in PCMS's system and

13    on her credit file with Experian.  *Statement of Undisputed Facts of Defendant Preferred*

14    *Collection and Management* Services Inc. ¶ 9.  Even though collection agencies do not

15    need a patient's permission to collect on an account nor report it to Credit Reporting

16    Agencies ("CRAs") such as Experian.  The disclosure to CRAs is expressly permitted

17    under HIPAA under TPO[14] exceptions for a business associate of a provider covered by a

---

[13]  The disputes were made on October 25, 2017, through Equifax, and on October 26, 2017, through Experian.  All responses to all disputes were completed on November 9, 2017.

[14]  TPO is short-hand jargon for "treatment, payment and health operations."  The HIPAA regulations allow a covered entity to use or disclose protected health information (PHI) for treatment, payment and health operations.  *See 45 C.F.R. § 164.502(a)(1)(i).*   Further payment is defined in 45 C.F.R. §164.501(2)(vi).  The two sections create a "payment" exception to the disclosure of PHI ***to consumer reporting agencies of any of the following protected health information relating to collection of premiums or reimbursement:***

1    business associates agreement.  On May 28, 2019, another PCMS employee, Christine

2    Morales, received another copy of the May 18, 2019, Letter via certified mail, and it was

3    uploaded to Fowler's account on May 30, 2019. *Statement of Undisputed Facts of*

4    *Defendant Preferred Collection and Management Services Inc.*, ¶ 15; *see also Appendix*

5    *A Defendant PCMS's Answers to Plaintiff's Interrogatories* (Answer to Interrogatory #

6    4).  On June 10, 2019, Ms. Morales, received another copy of the May 19, 2019, Letter

7    via certified mail which was also uploaded to the patient's account(s) by Ms. Vinson on

8    June 14, 2019.  *Statement of Undisputed Facts of Defendant Preferred Collection and .*

9    *Management Services Inc.*, ¶ 16; *see also Appendix A Defendant PCMS's Answers to*

10    *Plaintiff's Interrogatories* (Answer to Interrogatory # 4).     On February 24, 2021, Ms.

11                Diaz, on behalf of PCMS

12                received

13    ACDVs via e-OSCAR as to only two of the 13 accounts reported by Experian.  These

14    disputes were again "001" "Not His/Hers." Ms. Diaz again confirmed the demographics

15    had not changed.  Statement of Undisputed Facts of Defendant Preferred Collection and

16    Management  Services  Inc.  ¶ 12.  On March 10, 2021, Incare Medical Services, Inc.,

17    recalled all of the accounts it  placed PCMS.  *Statement of Undisputed Facts of Defendant*

---

*(A) Name and address;*
*(B) Date of birth;*
*(C) Social security number;*
*(D) Payment history;*
*(E) Account number; and*
*(F) Name and address of the health care provider and/or health plan.*

*45 C.F.R. §164.501(2)(vi)* (Emphasis added)

1    *Preferred Collection and Management Services Inc.*, ¶ 2.  As a result, PCMS stopped

2    credit reporting on the 13 accounts assigned to it by Incare Medical Services, Inc.

3    11.    In deposition testimony, Fowler stated that in 2019 she worked for a company called VCC

4    Consulting a credit repair association helping consumer with credit issues.[15]    *Statement of*

5    *Undisputed Facts of Defendant Preferred Collection and Management Services Inc.*, ¶

6    21-23.  She explained that she "followed a manual"[16] to help consumers with credit

7    reporting "issues" and informed them of the "steps that they should probably take," and

8    "following through and making sure [the consumers are/were] consistent in [their]

9    paperwork. . . . and not dropping the ball. . . . and "how to keep it in play."    *Statement of*

10    *Undisputed Facts of Defendant Preferred Collection and Management Services Inc.*, ¶

11    21-24; *see also Appendix B* (Fowler Depo Trans. Pg 18, line 16).  Fowler also had access

12    to "sample letter, and sample responses" in the VCC manual.  *See Appendix B* (Deposition

13    of Angelia Fowler Trans. Pg 127, line 2-6).

14                                **Memorandum of Law**

15    **I. Summary Judgment Standard**

16            Summary judgment is appropriate "if the movant shows that there is no genuine dispute as

17    to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P.*

18    *56(a)*.  In order to preclude summary judgment a material issue of fact must exist.  *See Anderson*

19    *v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  If the fact

---

[15]  Fowler testified that she worked for VCC Consulting (*Deposition of Angelia Fowler* Trans. Pg 18, line 6-7), which was a "credit repair association." *Id.* Pg 17 line 20-21.

[16]  (*Deposition of Angelia Fowler* Trans. Pg 126, lines 16-21).

1    is not material and is disputed, it does not prevent the award of summary judgment.  Only the

2    existence of a genuine issue of material fact will preclude summary judgment.  *Koehler v.*

3    *Waypoint Res. Grp.*, LLC, No. 8:18-cv-2071-T-60AAS, 2019 U.S. Dist. LEXIS 191438, at *2

4    (M.D. Fla. Nov. 5, 2019)(*citing Anderson*, 477 U.S. at 249).  An issue is genuine "if the evidence

5    is such that a reasonable jury could return a verdict for the nonmoving party." Id.   A fact is

6    material "if it is a legal element of the claim under the applicable substantive law which might

7    affect the outcome of the case." *Allen v. Tyson Foods, Inc*., 121 F.3d 642, 646 (11th Cir. 1997).

8    The moving party bears the initial burden of showing that there are no genuine issues of material

9    fact. *Hickson Corp. v. N. Crossarm Co., Inc*., 357 F.3d 1256, 1260 (11th Cir. 2004). When the

10   moving party has discharged its burden, the nonmoving party must then designate specific facts

11   showing the existence of genuine issues of material fact. *Jeffery v. Sarasota White Sox, Inc.*, 64

12   F.3d 590, 593-94 (11th Cir. 1995). If there is a conflict between the parties' allegations or

13   evidence, the nonmoving party's evidence is presumed to be true and all reasonable inferences

14   must be drawn in the nonmoving party's favor.  *Koehler*, No. 8:18-cv-2071-T-60AAS, 2019 U.S.

15   Dist. LEXIS 191438, at *3 (M.D. Fla. Nov. 5, 2019)(*citing Shotz v. City of Plantation*, 344 F.3d

16   1161, 1164 (11th Cir. 2003)).

17        The standard for cross-motions for summary judgment is no different from the standard

18   applied when only one party moves for summary judgment. *See Am. Bankers Ins. Grp. v. United*

19   *States*, 408 F.3d 1328, 1331 (11th Cir. 2005). The Court must consider each motion separately,

20   resolving all reasonable inferences against the party whose motion is under consideration.  Id.

21   "Cross-motions for summary judgment will not, in themselves, warrant the court in granting

22   summary judgment unless one of the parties is entitled to judgment as a matter of law on facts

1    that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984)

2    (*quoting Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co.*, 512 F.2d 1017 (5th Cir.

3    1975)).

4    **II.      Analysis**

5    **A.  Count III Violation of 15 U.S.C. §1681s-2(b)**

6          Fowler asserts PCMS violated the FCRA, specifically, §1681s-2(b), "by continuing to

7    inaccurately represent within Fowler's credit file that at least 13 different PCMS accounts were

8    hers." *See Complaint*, page 6 ¶ 38 (Doc. #1).  Fowler also alleged PCMS violated the FCRA by:

9    a) failing to fully and properly investigate the Plaintiff's dispute of responsibility for the 13

10   accounts reported; b) failing to review all relevant information regarding the accounts;

11   c) modifying and failing to accurately report the actual date of delinquency; d) failing to correctly

12   report results of an accurate investigation; e) failing to permanently and lawfully correct its own

13   records to prevent the re-reporting of the inaccurate information regarding the accounts.  See Id.

14   **1.      No private right of action against a furnisher for reporting inaccurate**
15   **information**.
16

17         The first violation Fowler alleges against PCMS in paragraph 38 of the Complaint is that

18   PCMS violated the FCRA "by continuing to inaccurately represent within Fowler's credit file that

19   at least 13 different PCMS accounts were hers." *Complaint*, page 6 ¶ 38 (Doc. #1).  It is certainly

20   true that the FCRA prohibits any person from "furnish[ing] any information relating to a

21   consumer to any consumer reporting agency if the person knows or has reasonable cause to

22   believe that the information is inaccurate." *see Grant v. Direct Gen. Ins. Co.*, No.

23   1:17-CV-4205-TWT-JSA, 2018 U.S. Dist. LEXIS 221510, at *9 (N.D. Ga. Sep. 5,

1    2018)(quoting 15 U.S.C. § 1681s-2(a)(1)(A)).  However, the mere furnishing of inaccurate

2    information is not enforceable through private lawsuits. *See Peart v. Shippie*, 345 F. App'x 384,

3    386 (11th Cir. 2009); *Green v. RBS Nat'l Bank*, 288 F. App'x 641, 642 (11th Cir. 2008); *Milgram*

4    *v. Chase Bank USA*, No. 19-60929-CIV, 2020 U.S. Dist. LEXIS 12411, at *15 (S.D. Fla. Jan.

5    25, 2020); *Grant v. Direct Gen. Ins. Co.*, No. 1:17-CV-4205-TWT-JSA, 2018 U.S. Dist. LEXIS

6    221510, at *15 (N.D. Ga. Sep. 5, 2018); *Horton v. HSBC Bank, No.* 1:11-CV-3210-TWT, 2013

7    U.S. Dist. LEXIS 78612, 2013 WL 2452273, at *13 (N.D. Ga. June 5, 2013); *Ingram v. Green &*

8    *Cooper, Attorneys L.L.P.*, No. 1:11-cv-03475-TWT—RGV, 2012 U.S. Dist. LEXIS 71163, 2012

9    WL 1884598, at *4 (N.D. Ga. Apr. 20, 2012)).   Fowler does not purport to allege that a

10   violation of 15 U.S.C. §1681s-2(a) by PCMS as it is nowhere cited in the complaint as a basis for

11   liability as contrasted her claim based upon §1681s-2(b).  Therefore the bare allegation that

12   PCMS provided inaccurate information is not actionable as alleged in ¶ 38 as a matter of law, and

13   PCMS is entitled to summary judgment on this claim to the extent that it being made by Fowler.

14          **2.      Claims against furnishers[17] based upon FCRA §1681s-2(b)**

15          Instead, in order to state a claim for violation § 1681s-2(b), a plaintiff must allege and

16   prove that the defendant received the proper notice from the CRA pursuant to 15 U.S.C. §

17   1681i(a)(2) and that the defendant failed to investigate and respond promptly to notice of a

18   dispute.  *See Grant v. Direct Gen. Ins. Co.*, No. 1:17-CV-4205-TWT-JSA, 2018 U.S. Dist.

19   LEXIS 221510, at *10 (N.D. Ga. Sep. 5, 2018)(quoting *Horton v. HSBC Bank, No.*

20   1:11-CV-3210-TWT, 2013 U.S. Dist. LEXIS 78612, 2013 WL 2452273, at *6-7) (N.D. Ga. June

---

[17]  Under the FCRA, entities that furnish information to consumer reporting agencies (CRAs) are referred to as "furnishers."  *See Malm v. Household Bank, N.A.*, No. 03-4340 ADM/AJB, 2004 U.S. Dist. LEXIS 12981, at *12 (D. Minn. July 7, 2004)

1   5, 2013)). Thus, the consumer must allege and prove that the consumer sent the dispute to the

2   CRA and the CRA sent the dispute to the furnisher, in this case PCMS.

3              **a. Direct disputes by a consumer to a furnisher are not governed**
4                 **by §1681s-2(b)**
5
6          Since the § 1681s-2(b) furnisher's duties are not triggered until the furnisher receives a

7   proper notice from the consumer reporting agency, *see* §1681s-2(b)(1), any allegations that the

8   consumer communicated the dispute directly to the furnisher is insufficient to establish a violation

9   of the duties imposed on furnishers in §1681s-2(b).   Fowler alleges no other violations of the

10  FCRA by PCMS other than the §1681s-2(b) breach of the furnisher's duties.[18]   Fowler alleges

11  that on May 18, 2019, she sent a letter to PCMS disputing that she was the owner of/responsible

12  for the PCMS accounts, she was never treated by the medical provider associated with the

13  accounts, and asking PCMS to verifying its claim that the PCMS accounts were her responsibility,

14  including any original documentation. *See Complaint* (Page 3, ¶ 13)(Doc. #1).   Fowler never

15  alleges--and it is a technical matter--[19] that Fowler disputed a debt reported by PCMS with

16  Experian and that Experian provided the dispute to PCMS.   Assuming the allegation will be

17  inferred, the next requirement for Fowler is to show that PCMS breached one of the duties

18  enumerated in §1681s-2(b).   In sum, the allegations relating to Fowler sending a letter directly to

---

[18]  If a consumer does dispute the debt directly to the furnisher, the furnisher's duty is to note the account as disputed with the CRA. *See Bauer v. Target Corp.*, No. 8:12-cv-00978-AEP, 2013 U.S. Dist. LEXIS 201316, at *10 (M.D. Fla. June 19, 2013)(citing §1681s-2(a)(3)).

[19] *See Grant v. Direct Gen. Ins. Co.*, No. 1:17-CV-4205-TWT-JSA, 2018 U.S. Dist. LEXIS 221510, at *17 (N.D. Ga. Sep. 5, 2018)("Although it is now undisputed that [the furnisher] did receive such notice from [the credit reporting agency], the Plaintiff as a technical matter makes no such express allegation in the Amended Complaint."  However, there the Court inferred that, "in the circumstances otherwise alleged, [the credit reporting agency] would have likely transmitted the dispute to Defendant, as the furnisher. *Id.*\*18 (N.D. Ga. Sep. 5, 2018).

1    PCMS on May 18, 2019, and again in June 2019 where she allegedly disputed the debt is not

2    material to the §1681s-2(b) claim against PCMS.[20]  Nor is the failure to respond to the direct

3    dispute a basis for §1682s-2(b) liability against PCMS.

### b. Claims barred by the statute of limitations.

5          The undisputed facts reflect that Fowler *originally* disputed the thirteen accounts reported

6    by PCMS to Experian in October 2017.  *Statement of Undisputed Facts of Defendant Preferred*

7    *Collection and Management Services Inc.*, ¶ 15; *Appendix B (Fowler Deposition Trans*. Pg 54,

8    lines 21 to Pg 55, line 12*)*.  Further, PCMS after receiving the ACDV disputing the thirteen

9    accounts as "not hers" reviewed and responded to Experian verifying the accounts on November

10    9, 2017.   Id. at ¶ 8.  While not alleged in the complaint, Fowler's testimony was that she first

11    disputed the thirteen accounts in October 2017.  Id. at ¶ 6.

12          It is also not alleged in the complaint but Fowler testified that she was denied jobs as a

13    result of the negative credit.  She testified that she was turned down for employment by both the

14    Small Business Administration and Mass Mutual Insurance Company.  Fowler testified that she

15    was denied employment by Mass Mutual in November 2017.  *Appendix B (Fowler Deposition*

16    *Trans*. Pg 84, lines 13-15).  Fowler was not sure when she was denied employment by the Small

17    Business Administration SBA and she did not recall when she applied with the SBA, but it was

---

[20]  There is no allegation in the complaint that PCMS violated any duty under §1681s-2(a)(3), or that PCMS failed to note the account as disputed with the CRA which it did in fact do. *See Fowler Deposition, Exhibit 4* ("Redacted", Pg 3-15)(The Before Dispute "Comment Provides "Account information disputed by consumer" on each of the 13 accounts disputed in May 2019). Thus, the allegation relating to the May 18, 2019, dispute letter sent directly to PCMS fails to supports either the alleged violation pursuant to §1681s-2(b), nor is there a claimed violation of §1681s-2(a)(3), or any allegations that PCMS failed to comply with any duties imposed by §1681s-2(a)(3).

1    "whenever that horrific storm hit Puerto Rico." *Appendix B (Fowler Deposition Trans.* Pg 83,

2    lines 17-20).

3         PCMS asserted as its first affirmative defense the statute of limitations under the FCRA.

4    *See Answer and Affirmative Defenses of PCMS* (Doc.# 8, page 9, line 10 to page 10, line 5).  As

5    to civil actions, the FCRA affords a two year statute of limitations from a plaintiff's *discovery* of a

6    violation and a five year absolute statute of limitations for any violation. *See Miller v. Johnson &*

7    *Johnson*, 80 F. Supp. 3d 1284, 1289 (M.D. Fla. 2015)(citing §1681p).  Since PCMS responded

8    to Fowler's first round of disputes on November 9, 2017, the  latest Fowler could have filed an

9    action regarding the first dispute would have been November 9, 2019, and this complaint was

10   filed April 30, 2021.  *See Brockman v. Ocwen Loan Servicing*, LLC, No.

11   1:15-CV-00745-WSD-AJB, 2015 U.S. Dist. LEXIS 176127, at *21 (N.D. Ga. Oct. 26, 2015).

12   Therefore any injury that could have resulted from a violation of §1681s-2(b) in the November 9,

13   2017, response to the thirteen disputes would also be barred if such injury was not within 2 years

14   from the filing (April 30, 2021) of Fowler's claim.

15        **A.  Injuries claimed in 2017.**

16        Fowler failed to plead that she was "denied employment" as part of her claim for damages,

17   however she did testify that in November of 2017, based upon the credit reporting, she was

18   denied employment. *Statement of Undisputed Facts of Defendant Preferred Collection and*

19   *Management Services Inc.*, ¶ 28; *Appendix B (Fowler Deposition Trans.* Pg 84, lines 4-21).  The

20   claims were so vague[21] that they probably would not be sufficient if made timely, but they are

---

[21]  For example, Fowler did not remember the name of the VP of Mass Mutual who made
the statement, *Statement of Undisputed Facts of Defendant Preferred Collection and*
*Management Services Inc.*, ¶ 28; *Appendix B (Fowler Deposition Trans.* Pg 54, lines 21 to Pg 55,

1    barred as a matter of law since her testimony was that the denials of employment occurred in

2    2017.  *Milgram v. Chase Bank USA*, No. 19-60929-CIV, 2020 U.S. Dist. LEXIS 12411, at *13

3    (S.D. Fla. Jan. 25, 2020)(It remains that furnishers can only be sued for violations—and be liable

4    for damages caused by violations—that occurred within two years prior to suit).

5            Fowler did allege that she paid higher interest, higher insurance and was denied credit as a

6    result of the reporting.  *See Complaint*, ¶23 (Doc. #1, page 4).  The only testimony she gave as to

7    higher interest was for a credit card with First Progress which was applied for in 2017.  *Statement*

8    *of Undisputed Facts of Defendant Preferred Collection and Management Services Inc*., ¶ 38

9    *Appendix B (Fowler Depo Trans*. Pg 95, lines 1-17).  Fowler testified no lender ever told her she

10   was being charged a higher interest rate based upon the credit reporting.  *Statement of*

11   *Undisputed Facts of Defendant Preferred Collection and Management Services Inc*., ¶ 39;

12   *Appendix B (Fowler Depo Trans*. Pg 97, line 18 through Pg 98, line 5).  As a result, Fowler's

13   claim that she suffered higher interest rates is barred by the 2 year statute of limitations since it

14   allegedly occurred in 2017 when she got the First Progress credit card.

15           **B.      The 2019, and 2021 disputes were the same disputes as the 2017 disputes.**
16

17           As to the remaining disputes (13 in May 2019) and (2 in 2021) PCMS acknowledges that

---

line 12*)*, and she had no specifics on the employment denial with the SBA, she only remembered
that applied "whenever that horrific storm hit Puerto Rico.*"  Appendix B (Fowler Depo Trans*. Pg
83, lines 17-20) She also testified that she received no documents from either the SBA or Mass
Mutual that told her that she was denied employment. *Statement of Undisputed Facts of
Defendant Preferred Collection and Management Services Inc*., ¶30 *Appendix B (Fowler Depo
Trans*. Pg 88, lines 4-20 and Pg 85, lines 12-16).  Fowler testified these were the only two
occasions she was denied employment.  *Statement of Undisputed Facts of Defendant Preferred
Collection and Management Services Inc*., ¶ 31; *Appendix B (Fowler Depo Trans*. Pg 88, lines 4-
20) (See Fowler Deposition Trans. Pg 83, lines 11-16).

1    there is a split among the Districts as to whether, in the context of §1681s-2(b), the first dispute

2    determines the statute of limitations or if a new limitations period begins to run with each dispute

3    by the consumer. *See Milgram v. Chase Bank USA*, No. 19-60929-CIV, 2020 U.S. Dist. LEXIS

4    12411, at *12 (S.D. Fla. Jan. 25, 2020).  In *Milgram* the Southern District of Florida Court

5    cataloged the differing positions.  The Court rejected the furnisher's argument that a perpetual

6    statute of limitations could result by a consumer disputing every two years. *Id.* * 13.   However it

7    did emphasize that liability and damages occurring more than two years before the filing of the

8    suit are barred by the 2 year statute of limitations. *Milgram v. Chase Bank USA*, No.

9    19-60929-CIV, 2020 U.S. Dist. LEXIS 12411, at *13 (S.D. Fla. Jan. 25, 2020).

10        **3.      PCMS did not breach any duty imposed by §1681s-2(b)**

11        With regard to the §1682s-2(b) claim against PCMS the FCRA provides specifically, in

12    section 15 U.S.C. § 1681s-2(b)(1) (A)-(E) :

13    After receiving notice pursuant to section 611(a)(2) [15 USCS § 1681i(a)(2)] of a dispute
14    with regard to the completeness or accuracy of any information provided by a person to a
15    consumer reporting agency, the person shall:
16    (A) conduct an investigation with *respect to the disputed information*;
17    (B) *review all relevant information provided by the consumer reporting agency pursuant*
18    *to section* 611(a)(2) [15 USCS § 1681i(a)(2)];
19    (C) report the results of the investigation to the consumer reporting agency;
20    (D) if the investigation finds that the information is incomplete or inaccurate, report those
21    results to all other consumer reporting agencies to which the person furnished the
22    information and that compile and maintain files on consumers on a nationwide basis; and
23    (E) if an item of information disputed by a consumer is found to be inaccurate or
24    incomplete or cannot be verified after any reinvestigation under paragraph (1), for
25    purposes of reporting to a consumer reporting agency only, as appropriate, based on the
26    results of the reinvestigation promptly—
27              (i) modify that item of information;
28              (ii) delete that item of information; or
29              (iii) permanently block the reporting of that item of information.
30    15 U.S.C. § 1681s-2(b)(1) (A)-(E) (emphasis added)

1    Thus a furnisher duties upon receipt from a CRA, of a dispute from the consumer are to "

2    (1) conduct an investigation with respect to the disputed information; (2) review all relevant

3    information provided by the CRA; and (3) report the results of the investigation to the CRA."

4    *Lewis v. Suncoast Credit Union & USF*, No. 1:19-cv-01900-MHC-RDC, 2020 U.S. Dist. LEXIS

5    172549, at *9 (N.D. Ga. Aug. 28, 2020)(*quoting Felts v. Wells Fargo, N.A.*, 893 F.3d 1305,

6    1312 (11th Cir. 2018)).  The furnisher must conduct an investigation with respect to the disputed

7    information.  *See Id.* at *11 (emphasis original)(quoting 15 U.S.C. § 1681s-2(b)(1)(A)).

8               **A.  No evidence of inaccuracy in the reported accounts.**

9        A consumer cannot prevail on claim against a furnisher based upon § 1681s-2(b) of the

10   FCRA "without identifying some fact in the record establishing that the information [the

11   furnisher] reported regarding her account was inaccurate or incomplete.*"  Felts v. Wells Fargo

12   Bank, Nat'l Ass'n*, 893 F.3d 1305, 1313 (11th Cir. 2018).  Further, it is plaintiff's burden to show

13   a factual inaccuracy, rather than the existence of disputed legal questions.  *Chiang v. Verizon New

14   Eng., Inc.*, 595 F.3d 26, 38 (1st Cir. 2010).  If the undisputed facts indicate that the consumer has

15   not met this threshold requirement, PCMS is entitled to judgment as a matter of law.  *See Felts v.

16   Wells Fargo Bank, Nat'l Ass'n*, 893 F.3d 1305, 1313 (11th Cir. 2018).

17       Fowler has adduced no fact to indicate that the thirteen accounts reported by PCMS were

18   inaccurate or incomplete.  PCMS has produced an affidavit from Incare Medical Services, Inc.

19   (Incare) establishing that the information in the credit reports was accurate.  *See Appendix F*

20   (Affidavit of Incare Medical Services, Inc.).  The affidavit points out that its account numbers and

21   dates of service, which match what PCMS reported to the CRAs including Defendant, Experian.

22   *See Statement of Undisputed Facts of Defendant Preferred Collection and Management Services*

1    *Inc.*, ¶7. The affidavit identifies Incare as the medical billing service for a group of rounding

2    physicians at St. Mary's hospital.  *See Appendix F* (Affidavit of Incare Medical Services, Inc. Pg,

3    ¶ 6); *see also Statement of Undisputed Facts of Defendant Preferred Collection and*

4    *Management Services Inc.*, ¶3.  Fowler admits she was treated at St. Mary's hospital for thirty-

5    two days in 2015.  *See Appendix B (Fowler Deposition Trans*. Pg 28, line 16 to Pg 29, line 11).

6    Both PCMS and the representative from Incare referred to the providers as "rounding

7    physicians."  *Statement of Undisputed Facts of Defendant Preferred Collection and Management*

8    *Services Inc.*, ¶3.  The thirteen accounts with the physician's name and dates of service for each

9    respective rounding physician are attached to the Incare affidavit.  *See Appendix F (Affidavit of*

10   *Incare Medical Services Inc., Exhibit "B" thereto*.) ; see also Statement of Undisputed Facts of

11   Defendant Preferred Collection and Management Services Inc., ¶7

12          Fowler has provided no evidence or testimony to undermine the accuracy of the accounts

13   reported by PCMS.  While she did not recognized the physicians during her deposition

14   testimony,[22] its not likely that a patient is going to remember 2 years, or 4 years after the fact the

15   name of a physician that made a round at the hospital during an extended stay.  When a party

16   "fails to make a showing sufficient to establish the existence of an element essential to that party's

17   case, and on which that party will bear the burden of proof at trial[,] . . . there can be 'no genuine

18   issue as to any material fact,' since a complete failure of proof concerning an essential element of

19   the nonmoving party's case necessarily renders all other facts immaterial." *Bauer v. Target Corp.*,

20   No. 8:12-cv-00978-AEP, 2013 U.S. Dist. LEXIS 201316, at *9 (M.D. Fla. June 19,

21   2013)(*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265

---

[22] *See Appendix B (Fowler Deposition Trans*. Pg 30, line 1-22).

1   (1986). "The moving party is 'entitled to a judgment as a matter of law' because the nonmoving

2   party has failed to make a sufficient showing on an essential element of her case with respect to

3   which she has the burden of proof." *Celotex*, 477 U.S. at 323.

**B.   PCMS conducted a reasonable investigation with respect to the disputed information; and  reviewed all relevant information provided by the consumer reporting agency pursuant to section .**

8   A furnisher's duty to investigate depend upon the disputed information presented and

9   relevant information provided by the CRA.  Some disputes will require a deeper investigation

10   based upon what is provided to the furnisher, *see e.g. Westra v. Credit Control of Pinellas*, 409

11   F.3d 825, 827 (7th Cir. 2005), and who the furnisher is in relation to the original creditor.   *See*

12   *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 130 (11th Cir. 2016)("Whether a

13   furnisher's investigation is reasonable will depend in part on its status as original creditor, a

14   collection agency collecting on behalf of the original creditor, a debt buyer, or a down-the-line

15   buyer. . . .").  In *Hinkle* the reasonableness of the  investigation was based upon a consumer's

16   detailed  claim of "true identity fraud," which required more from a down-the-line debt buyer than

17   when the consumer makes a general dispute code "001" "Not His/Hers."   *Jackson v. Preferred*

18   *Collection & Mgmt. Servs.*, No. 8:19-cv-601-T-60JSS, 2020 U.S. Dist. LEXIS 234274, at *5

19   (M.D. Fla. Dec. 14, 2020).  When a dispute, or as here thirteen identical disputes, are limited to a

20   debt reported is not the consumer's the investigation is limited to the ownership of an account,

21   and the burden imposed on the furnisher is lower. *See Westra v. Credit Control of Pinellas*, 409

22   F.3d 825 (7th Cir. Ill.,May 27, 2005)(affirming summary judgment finding that the furnisher's

23   investigation was reasonable "in light of the scant information the furnisher received regarding the

24   nature of the consumer's dispute."); *Malm v. Household Bank, N.A.*, No. 03-4340 ADM/AJB,

1      2004 U.S. Dist. LEXIS 12981 (D. Minn. July 7, 2004).

2         In this case it is undisputed that Fowler went to the Experian website and reviewed her

3      credit report in 2017. [23]   Upon seeing accounts being reported by PCMS, she utilized the link on

4      the Experian website to make her disputes.[24]  This brought Fowler to the e-OSCAR dispute

5      "landing page" which allowed her to select the trade lines she wished to dispute.  On October 26,

6      2017, Fowler disputed all thirteen accounts reported by PCMS as "001""Not His/Hers."[25]

7      Experian passed on the information from the selected trade-line along with the information Fowler

8      disputed.  It is important to note that the consumer can select from one of many dispute codes.[26]

9      Further, Fowler understood that she could add a comment to her dispute,[27] or even upload a file

10     to go along with the dispute.[28]   When a dispute code "001" is selected from the drop down menu

11     the description given is "Not His/Hers" the dispute is raised by a consumer, the ACDV includes

---

[23]  In October 2017 Fowler first disputed the thirteen accounts PCMS reported to Experian.  *Appendix B (Fowler Deposition Trans. Pg 54, lines 21 to Pg 55, line 12).*  The thirteen accounts were disputed online in October 2017.

[24]  Fowler followed a link on Experian.com to initiate the disputes online. *Appendix B (Fowler Deposition Trans. Pg 129, lines 20 to Pg 130, line 11)*

[25]  . Fowler used a drop-down menu to select one of the generic disputes, (Fowler Deposition Trans. Pg 130, lines 12-21) including "this debt is not mine."  (Fowler Deposition Trans. Pg 130, lines 24-25).  *See also Appendix D (Deposition of Matt Kiefer*, page 19, line 2-11).

[26]  Fowler testified that the dispute codes were "generic."  (Fowler Deposition Trans. Pg 130, lines 18-21) The colloquy is as follows:
(Q. Okay. And you have a list of options that you select from that is tailored to your specific dispute?
A.  No.  They're generic.).

[27]  (Fowler Deposition Trans. Pg 131, lines 10-13)

[28]  (Fowler Deposition Trans. Pg 131, lines 14-24)

1    information from the trade-line to identify the consumer as the account owner.  In this case, on

2    October 26, 2017, all thirteen ACDVs included Fowler's demographic information.  In other

3    words, the credit file for Fowler would have her name, date of birth, social security number,

4    address history, employment history, which would be included in the ACDV.  PCMS, as the

5    furnisher, would be required to review its information on each account disputed and make sure

6    that its information matched.  On each occasion that PCMS received an ACDV from Experian, a

7    live person at PCMS, Odalys Diaz, reviewed the demographic information in the ACDV and

8    compared it with the information in PCMS's computer system.[29]  By comparing and verifying that

9    the name, date of birth and social security number matches what is in the credit file in dispute,

10   PCMS has acted reasonably in investigating the thirteen accounts that Folwer disputed on

11   October 25, 2017, October 26, 2017.  Likewise, Fowler only disputed two of the thirteen

12   accounts on February 12, 2021.[30]   It should be noted that PCMS received the demographic from

13   somewhere and did not just pull Fowler's information from thin air.  This information highly

14   protected.  So when the furnisher receives this information from it the creditor providing and that

15   information matches what it on file with the CRA, it is more than a mere cursory review.  It is a

16   reasonably review under the circumstances.

17          As for the disputes coded as 112, on May 8, 2019, the dispute provided by the consumer

18   was "Claims inaccurate information. Did not provide specific dispute. Provide complete ID and

19   verify account information." *Statement of Undisputed Facts of Defendant Preferred Collection*

20   *and Management Services Inc*., ¶11 *see also Appendix C (Affidavit of Preferred Collection and*

---

[29]  See Appendix C, Affidavit of Odalys Diaz, ¶¶5-13

[30]  See Appendix C, Affidavit of Odalys Diaz, ¶12

1    *Management Services, Inc. Employee Odalys Diaz*, Pg 3, ¶ 7, and Pg 1 of Exhibit "A" attached

2    to the affidavit).  Again, based upon the dispute PCMS conducted a reasonable investigation

3    based upon the dispute presented.

4              **C. Fowler has not established any damages based upon the alleged violations.**
5              **Fowler alleges in her complaint in a conclusory**
6

7              Fowler alleges that she suffered Fowler alleges that based upon these violations she

8    suffered the following injuries: a) loss of credit, b) loss of ability to purchase and benefit from

9    credit, c) increased insurance rates, d) increased interest rates and the mental and emotional pain,

10   anguish, humiliation and embarrassment of credit denials.  *See Complaint* Doc. # 1 at ¶ 39.

11             However, she failed to establish that in fact any of these injuries were actually suffered by

12   her, or that they were cause by Defendant's actions.  For example, as for her claim of loss of

13   credit she testified she did not mean that any credit she had was not lost and no accounts were

14   closed. *Statement of Undisputed Facts of Defendant Preferred Collection and Management*

15   *Services Inc.*, ¶ 37; *Appendix B (Fowler Depo Trans.* Pg 93, lines 17-21). As for her claim of

16   "loss of ability to purchase and benefit from credit," she testified none of her existing credit

17   accounts were closed because of her credit status.  *Statement of Undisputed Facts of Defendant*

18   *Preferred Collection and Management Services Inc.*, ¶ 36 *Appendix B (Fowler Depo Trans.* Pg

19   93, lines 17-25). As for her claim of  increased insurance rates her testimony reflects that she has

20   no documentation to show that the rate she was quoted for insurance was more due to her credit.

21   *Statement of Undisputed Facts of Defendant Preferred Collection and Management Services*

22   *Inc.*, ¶ 34 *Appendix B (Fowler Depo Trans.* Pg 89, line 16 through Pg 90, line 11).  As for her

23   claim of  increased interest rates she testified that no lender ever told her that she was being

1    charged higher interest rates based upon Experian's credit reporting. *Statement of Undisputed*

2    *Facts of Defendant Preferred Collection and Management Services Inc.*, ¶ 39 *; Appendix B*

3    *(Fowler Depo Trans*. Pg 97 line 18 through 98, line 5). Nor did Fowler have any documentation

4    to show the difference between the interest rates that were available to her before the reporting of

5    the accounts. *Statement of Undisputed Facts of Defendant Preferred Collection and*

6    *Management Services Inc.*, ¶ 40; *Appendix B (Fowler Depo Trans*. Pg 97, lines 7-11).

7         Fowler's claims about mental anguish and emotional distress were generalized as PTSD.

8    *Statement of Undisputed Facts of Defendant Preferred Collection and Management Services*

9    *Inc.*, ¶ 41. She has no evidence that the emotional anguish she was going through was caused by

10   PCMS's actions. She testified that she was ill in 2015, was hospitalized for an extended period[31]

11   of which kept her unemployed until August of 2016.[32] She had been turned down for a couple

12   jobs in 2017. She had other accounts that she was disputing each time she disputed the PCMS

13   accounts.[33] She had a rough couple of years according to her testimony, but there is nothing that

14   has been presented to establish that any mental anguish she is suffering was caused by PCMS's

15   actions. Therefore based upon the lack of evidence to show that her damages were caused by

16   PCMS's action, her claim against it for violation of §1681s-2(b) fails as a matter of law. *See*

17   *Bauer v. Target Corp.*, No. 8:12-cv-00978-AEP, 2013 U.S. Dist. LEXIS 201316, at *44-45

18   (M.D. Fla. June 19, 2013)(quoting *Rambarran v. Bank of Am., N.A.*, 609 F. Supp. 2d 1253,

---

[31] *Statement of Undisputed Facts of Defendant Preferred Collection and Management Services Inc.*, ¶ 1.

[32] *Id.* at 26.

[33] *Id.* at 42,43; *Appendix B (Fowler Depo Exh. 2,* Pg 1-2, 4, 6-8) *Appendix B (Fowler Depo Exh.* 4, Pg 1-2, 16).

1262-63 (S.D. Fla. 2009) ("the failure of an FCRA plaintiff 'to produce evidence of damage resulting from a FCRA violation mandates summary judgment.'" *(citing Nagle v. Experian Info. Solutions, Inc.*, 297 F.3d 1305, 1307 (11th Cir. 2002)).

Finally, Fowler alleges in a conclusory fashion that PCMS's conduct "was willful, or, in the alternative negligent."  It is Fowler's burden to provide evidence of wilfulness.  In the context of civil liability under the FCRA, a willful violation includes an action that is "not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Bauer v. Target Corp.*, No. 8:12-cv-00978-AEP, 2013 U.S. Dist. LEXIS 201316, at *45 (M.D. Fla. June 19, 2013)(*quoting Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007).  There is no showing that the information reported was *inaccurate*, or that PCMS was reckless when it received the thread-bare disputes raised by Fowler every other year beginning in 2007.  Keeping the dispute "in play."[34]  The duty of a furnisher is to investigate the dispute presented, *see* § 1681s-2(b)(1) (A), which is based upon what the consumer raises.  It is not required to speculate on any possibility for the consumer's dispute.

As a result, PCMS asserts that it did conduct a reasonable investigation based upon the 56 generic disputes it received, therefore it did not violate the FCRA and is entitled to a summary judgment as to count IV of the complaint.

**III.  Conclusion**

For the foregoing reasons, Defendant, PREFERRED COLLECTION AND MANAGEMENT SERVICES, INC., requests that summary judgment be granted against plaintiff as to the complaint, Count IV and the complaint be dismissed with prejudice.

---

[34]    *Statement of Undisputed Facts of Defendant Preferred Collection and Management Services Inc.*, ¶ 23; *Appendix B (Fowler Depo Trans.* Pg 18, lines 16).

1    Dated: January 7, 2022.

2                                    By:     /s/ Robert A. Vigh
3                                            ROBERT A. VIGH
4                                            FBN: 0991902
5                                            Trial Counsel
6                                            SOLOMON, VIGH & SPRINGER, P.A.
7                                            P.O. BOX 3275
8                                            TAMPA, FL 33601-3275
9                                            (813) 229-0115
10                                           rvigh@svslawfirm.com  (primary)
11                                           Robvigh@gmail.com (secondary)
12
13                          **CERTIFICATE OF SERVICE**
14          I HEREBY CERTIFY that on January 7, 2022, I electronically filed the foregoing
15   document with the clerk of the court using CM/ECF, and that a Notice of Electronic Filing of the
16   foregoing has been generated and is being served upon all counsel of record this date.
17
18
19                                   By:     /s/ Robert A. Vigh
20                                           ROBERT A. VIGH
21                                           FBN: 0991902
22
23