**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ANGELIA FOWLER,

      Plaintiffs,

v.                                                                          Case No. 8:21-CV-01038-WFJ-AAS

EXPERIAN INFORMATION SOLUTIONS, INC.
and PREFERRED COLLECTION AND
MANAGEMENT SERVICES, INC,

      Defendants.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT**
**PREFERRED COLLECTION AND MANAGEMENT SERVICES, INC.'S**
**MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56, Local Rule 3.01 and this Court's June 29, 2021 Order [Dkt.

15], Plaintiff Angelia Fowler ("Plaintiff") hereby submits her Response in Opposition to Defendant

Preferred Collection and Management Services, Inc.'s ("Defendant" or "PCMS") Motion for

Summary Judgment ("Motion") [Dkt. 21].

**I.     GROUNDS FOR OPPOSITION**

It is clear that pursuant to Fed. R. Civ. P. 56, Defendant's Motion on Count IV of Plaintiff's

Complaint[1] should be denied because:

    1.      Defendant's Motion fails to establish that there are no genuine issues of material
            fact;

    2.      Plaintiff claims in Count IV are not barred by the statute of limitations;

    3.      PCMS did breach its duties imposed by 1681s-2(b) because:

            a.      The information furnished to Experian by PCMS regarding the PCMS
                    Accounts was inaccurate

_____

[1] Count IV is a for violation of 15 U.S.C. §1681s-2(b) of the Fair Credit and Reporting Act ("FCRA").

b.    PCMS failed to conduct reasonable investigations of Plaintiff's disputes; and

c.    Plaintiff has established both actual damages and that she is entitled to damages for PCMS's willful violation of the FCRA;

4.    Plaintiff has presented sufficient evidence to establish a prima facie claim under 15 U.S.C.S. § 1681s-2(b).

In addition, Plaintiff objects pursuant to Fed. R. Civ. P. 26 and Fed. R. Civ. P. 56 that Defendant should not be allowed to rely upon the Affidavit of Raj Shah ("Mr. Shah") [Dkt. 23-7] because (1) neither Mr. Shah and/or Incare was ever identified by PCMS as a potential witness in discovery and (2) the Exhibits attached to Mr. Shah's Affidavit are not admissible.

## II.    RESPONSE TO "BACKGROUND FACTS"

1.    In response to Paragraph #1 of Defendant's "Background Facts," Plaintiff admits the allegations.

2.    In response to Paragraph #2 of Defendant's "Background Facts," Plaintiff acknowledge that Counts I, II and III relate only to Defendant Experian Information Solutions, Inc.

3.    In response to Paragraph #3 of Defendant's "Background Facts," Plaintiff admits the allegations.

4.    In response to Paragraph #4 of Defendant's "Background Facts," Plaintiff restates her response to Paragraph #20 of her Statement of Disputed Facts

5.    In response to Paragraph #5 of Defendant's "Background Facts," Plaintiff admits the allegations.

6.    In response to Paragraph #6 of Defendant's "Background Facts," Plaintiff admits the allegations.

7.      In response to Paragraph #7 of Defendant's "Background Facts," Plaintiff admits the allegations.

8.      In response to Paragraph #8 of Defendant's "Background Facts," Plaintiff admits the allegations.

9.      In response to Paragraph #9 of Defendant's "Background Facts," Plaintiff admits that PCMS was a third-party debt collector for Incare Medical Services, Inc. ("Incare"); however, Plaintiff denies that she ever received any services from providers employed by or whose services were billed by Incare. [Dkt. 23-4, 27:13-15]. Plaintiff never received any bills from Incare at any point and had never even heard of Incare until the name appeared on her credit report years later. [Dkt. 23-4, 30:14-22, 31:21-32:8]. Plaintiff's doctor at St. Mary's Medical Center ("St. Marty's") was Dr. Williker. [Dkt. 23-4, 31:10-12]. Dr. Williker, Plaintiff's doctor at St. Mary's, is not among the physicians listed and Defendant has provided no evidence that any of these physicians actually saw and/or provided services to Plaintiff during her stay at St. Mary's and/or that any of these physicians was performing rounding services for Dr. Williker. [*See*, Dkt. 23-5, 9:16-10:17, 20:21-21:6; Dkt. 23-7, ¶¶5-6, Ex. A-B].

10.     Initially, numerous allegations in Paragraph #10 of Defendant's "Background Facts" should not be considered by the Court because Defendant has failed to comply with Fed. R. Civ. P. 56(c)(1) and this the Court's CMSO regarding pinpoint citations to the record.[2] Here, Defendant has alleged numerous "facts" in Paragraph #10 which have absolutely no citation to the record supporting them. [*See* Dkt. 21, 5:14-6:5,6:14-7:1, 7:10-14, 8:1-2 and fn. 13].[3] Accordingly,

---

[2] Specifically, this Court's CMSO, issued June 29, 2021, states that "[a]ny record citations should be to page and line of the filed materials." [Dkt. 15, Section 7(a), pg. 2].
[3] When faced with motions for summary judgment where a party fails to include any citation to the record supporting the alleged fact, courts in the Eleventh Circuit have found that such "facts" should not be considered. *Jones v. Coty, Inc..*, 362 F. Supp. 3d 1182, 1196 (S.D. Ala. 2018).

the alleged "facts" which lack citation should not be considered.

In response to the allegations in Paragraph #10 that do contain citations to the record, Plaintiff states as follows:

a. In response to the claims made in lines 4:17-4:22 of the Motion and footnote nos. 6 and 7[4] [Ex. A, 4:17-22], Plaintiff restates her responses to Paragraphs #2, 4 and #7 of her Statement of Disputed Facts.

b. In response to the claims made in lines 5:1-5:4 of the Motion and footnote nos. 8, 9 and 10 [Ex. A, 5:1-5:4], Plaintiff restates her response to Paragraph #4 of her Statement of Disputed Facts.

c. In response to the claims made in lines 5:4-7 of the Motion [Ex. A, 5:4-7], Plaintiff restates her response to Paragraph #6 of her Statement of Disputed Facts.

d. In response to the claims made in lines 5:7-10 of the Motion [Ex. A, 5:7-10], Plaintiff restates her responses to Paragraphs #9 and #10 of her Statement of Disputed Facts and denies that she did not provide further comment and/or documentation to PCMS as Plaintiff added the comment to each of her 28 online disputes with Experian that "I HAVE NEVER RECEIVED SERVICES FROM THIS COMPANY AND I HAVE NO KNOWLEDGE OF THIS ACCOUNT NEVER AGREED TO PAY," she sent letters directly to and called PCMS but got no response, and Plaintiff also provided Experian with a letter explaining her dispute in October/November 2017. [Dkt. 23-4, 32:13-33:2, 33:15-22, 55:8-21; Dkt. 23-9, Bates Nos. EXP-FOWLER-002081-002107].

e. In response to the claims made in lines 5:10-13 of the Motion [Ex. A, 5:7-10], Plaintiff restates her response to Paragraph #9 of her Statement of Disputed Facts

f. In response to the claims made in lines 6:5-11 of the Motion [Ex. A, 6:5-11], Plaintiff restates her responses to Paragraphs #9 and #14 of her Statement of Disputed Facts.

g. In response to the claims made in lines 6:12-14 of the Motion [Ex. A, 6:12-14], Plaintiff claims that the alleged facts are not supported by the record evidence cited to in Paragraph #9 of Defendant's Statement of Undisputed Facts which deals solely with PCMS's response to Plaintiff's October/November 2017 dispute and not the Plaintiff's dispute in May 2019. Regardless, Plaintiff restates her response to Paragraph #9 of her Statement of Disputed Facts.

---

[4] Because Plaintiff is required to respond to the allegations in ¶10 of Defendants "Factual Background", Plaintiff has listed the page:line(s) of Defendant's Motion for the Court's ease in tracking Plaintiff's responses. Exhibit A to Plaintiff's Response is a copy of the Motion with the line numbers added. Plaintiff has also highlighted the portions of Defendant's Motion which lack citations to the record.

h.  In response to the claims made in lines 7:1-8 of the Motion [Ex. A, 7:1-8], Plaintiff restates her responses to Paragraphs #15 and #16 of her Statement of Disputed Facts.

i.  In response to the claims made in lines 7:14-15 of the Motion [Ex. A, 7:14-15], Plaintiff claims that the alleged facts are not supported by the record evidence cited to in Paragraph #12 of Defendant's Statement of Undisputed Facts. Regardless, Plaintiff restates her response to Paragraph #12 of her Statement of Disputed Facts.

j.  In response to the claims made in lines 7:16-17 of the Motion [Ex. A, 7:16-17], Plaintiff restates her response to Paragraph #2 of her Statement of Disputed Facts.

11.  In response to Paragraph #11 of Defendant's "Background Facts," Plaintiff admits the allegations.

## III.  MEMORANDUM OF LAW

A.  <u>Defendant's Motion fails to establish that there are no genuine issues of material fact</u>

Initially, Defendant is not entitled to summary judgment on its Motion on Count IV of Plaintiff's Complaint and its Motion should be denied because Defendant has failed to show that there are no genuine issues as to any material facts.[5] Here, there are several genuine issues of material fact in question, including but not limited to, whether or not the information PCMS was furnishing to Experian regarding Plaintiff being responsible for the 13 accounts was accurate, whether Defendant's investigations of Plaintiff's disputes were reasonable and whether Defendant acted willfully. Accordingly, just due to numerous disputed issues of material fact, Defendant's

---

[5] Material facts are those over which disputes "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby. Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Disputes about material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

Motion should be denied. Furthermore, as shown below, Defendant has also failed to establish it is entitled to summary judgment on Count IV as a matter of law. [6]

B.       Defendant Should Not be Allowed to Rely Upon the Affidavit of Raj Shah

As an initial matter, pursuant to Fed. R. Civ. P. 26 and Fed. R. Civ. P. 56, Plaintiff objects to the affidavit of Raj Shah [Dkt. 23-7], acting as "custodian of records" for Incare. Mr. Shah's affidavit should not be considered because (1) PCMS failed to identify him or Incare as potential witness in this matter, and (2) he has attached two (2) exhibits to his affidavit (Exhibits A and B) which are inadmissible hearsay which do not meet the business records exception.

1.       Neither Mr. Shah and/or Incare was Ever Identified by PCMS as a Potential Witness in Discovery'

Generally, each party is required to provide the name of any individual who is likely to have discoverable information that the disclosing party may use to support its claims or defenses. *See* Fed.R.Civ.P. 26(a)(1)(A)(I). In this regard, parties have an ongoing obligation to supplement or correct information that has been disclosed. *See* Fed.R.Civ.P. 26(e)(1). "If a party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1).

Here, PCMS failed to identify Mr. Shah and/or Incare (or any other witnesses) as a potential witness, as required by Rule 26(a) or 26(e). PCMS never even served Rule 26 Initial Disclosures

---

[6] In order to state a valid claim under 15 U.S.C.S. § 1681s-2(b), a plaintiff must plead and establish: (1) she notified a consumer reporting agencies (CRA) that he disputed the completeness or accuracy of information in his credit report, (2) the CRA gave notice of the dispute to the appropriate furnisher, and (3) the furnisher either: (a) failed to conduct a reasonable investigation of the identified dispute, (b) failed to review all of the relevant information provided by the CRA, (c) failed to report the results of its investigation to the notifying CRA, or (d) if an item is found to be inaccurate, incomplete, or unverifiable, failed to modify, delete, or permanently block the reporting of that information. *Mosley v. Monterey Financial Services, LLC*, No. 1:16-cv-03614-MHC-AJB, 2017 U.S. Dist. LEXIS 221383, 2017 WL 8186861, at *3 (N.D. Ga. May 10, 2017).

on Plaintiff and did not identify Mr. Shah or Incare in discovery. [See Ex. B, Response to Interrogatory #5, pg. 3-4]. Accordingly, pursuant to Fed. R. Civ. P. 26, Mr. Shah's affidavit should not be considered as neither he nor Incare was ever identified as a witness by PCMS.

2.  The Exhibits Attached to Mr. Shah's Affidavit are Not Admissible

On a motion for summary judgment, the Court "may consider only that evidence which can be reduced to an admissible form." *Rowell v. Bellsouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005). A document may be admissible as a business record "if it was made at or near the time by — or from information transmitted by — someone with knowledge; if it was kept in the course of regularly conducted activity; and if making the record was a regular practice of that activity." *In re Int'l Mgmt. Assocs., LLC*, 781 F.3d 1262, 1266 (11th Cir. 2015); Fed. R. Evid. 803(6). These requirements may be established through the testimony of the custodian or other qualified witness who can explain the record keeping procedures utilized by the business to create the business records. *Id*. at 1266, 1268. "It is sufficient that the witness be able to **identify the record as authentic and specify that it was made and preserved in the regular course of business**." *United States v. Langford*, 647 F.3d 1309, 1327 (11th Cir. 2011) (quoting *United States v. Atchley*, 699 F.2d 1055, 1058 (11th Cir. 1983))(emphasis added).

Here, Mr. Shah's affidavit fails to establish that Exhibits A and B to his affidavit meet the requirements of the business records exception. Mr. Shah's affidavit just generally parrots the language of Fed. R. Evid. 803(6) and fails to truly explain the Incare's record keeping procedures utilized to create the business records and/or explain the procedures for keeping records. [Dkt. 23-7, ¶¶3-4]. In fact, Mr. Shah's affidavit fails to establish that Exhibits A and B were (1) records made at or near time by someone with knowledge, (2) records kept in the course of Incare's regularly conducted activity, (3) that making such records/lists was a regular practice of Incare and

(4) that Exhibits A and B are accurate copies of Incare's business records.[7]

The lack of information provided by Mr. Shah regarding Incare's preparation and maintenance of alleged records such as Exhibit A and B indicate a lack of trustworthiness in these records, particularly when (1) neither Exhibit A nor Exhibit B mention Plaintiff by name and/or contain any information identifying Plaintiff as the debtor responsible in any way and (2) Incare claims to have maintained numerous other documents which would clearly identify Plaintiff as the debtor (such as "medical records," "billing records," and "signed consents"), but has failed to attach any of those documents to Mr. Shah's affidavit. [Dkt. 23-7, ¶4]. Accordingly for the reasons listed above, Mr. Shah's affidavit and Exhibits A and B to his affidavit [Dkt. 23-7; Dkt. 23-7, Ex. A and B] should not be considered by the Court in support of Defendant's Motion.[8]

C.  Plaintiff's Claims Against PCMS Under 15 U.S.C. §1681s-2(b)

Plaintiff's claims against Defendant PCMS in Count IV are brought under 15 U.S.C. §1681s-2(b). The FCRA does provide a private right of action for a violation of § 1681s-2(b), but only if the furnisher received notice of the consumer's dispute from a consumer reporting agency. *Green v. RBS Nat'l Bank*, 288 F. App'x 641, 642 (11th Cir. 2008). Here, it is undisputed that (1) Plaintiff did dispute the information being reported regarding the PCMS accounts with a credit reporting agency (Experian) and (2) that PCMS did receive notice of Plaintiff's disputes from a

---

[7] Mr. Shah's affidavit fails to specifically establish how documents like Exhibits A (a list of Plaintiff's alleged Incare accounts) and B (a list of alleged Incare providers who saw Plaintiff) are created and/or kept and fails to establish that creation of such lists is a regular practice of Incare. [Dkt. 23-7, ¶¶3-6]. Mr. Shah also does not claim that Exhibits A and B are authentic copies of Incare's business records, as he does not claim that these Exhibits are true and correct copies of the documents created and maintained by Incare. [Dkt. 23-7, ¶¶3-6].

[8] To the extent Mr. Shah's affidavit is considered, it is clear that Mr. Shah has no personal knowledge of whether Plaintiff actually received the services Incare claims she is responsible for. Mr. Shah does not allege he witnessed Plaintiff receive services from Incare. [Dkt. 23-7, ¶1-11]. Plaintiff denies she received any services (or bills) from Incare or that she was a patient seen by the providers listed in Exhibit B. [Dkt. 23-4, 27:13-15, 30:14-22, 31:10-12]. See Fed.R.Civ.P. 56 and Fed.R.Evid. 602.

credit reporting agency (Experian) in November 2017, May 2019 and February 2021. [Dkt. 21-1, ¶¶ 7-9, 11-12; Dkt. 23-5, 18:2-13, 22:5-16, 23:6-16, 26:17-27:6].[9]

  D. <u>Plaintiff Claims in Count IV are not Barred by the Statute of Limitations</u>

Initially, Defendant claims that it is entitled to summary judgment on Plaintiff's claims under the FCRA (Count IV) because she did not file her claim within 2 years of November 2017, which is when she received the result of her first dispute of the (then 28) PCMS accounts being reported. Defendant claims that this failure alone entitles it to summary judgment on all Plaintiff's claims.

The Eleventh Circuit has not addressed the issue and District courts are split on whether §1681s-2(b) creates a new right of action each time the furnisher of information to consumer reporting agencies receives notice of a consumer's dispute. *See Milgram v. Chase Bank USA*, No. 19-60929-CIV, 2020 U.S. Dist. LEXIS 12411, at *12 (S.D. Fla. Jan. 25, 2020). **However, the majority of courts examining this issue adopt the position that a new right of action is created with each dispute by the consumer**. *See Thomas v. Wells Fargo Bank, N.A*., No. 1:17-CV-3146-TWT-JSA, 2018 U.S. Dist. LEXIS 130738, 2018 WL 3719589, at *7 (N.D. Ga. May 30, 2018) (collecting cases to demonstrate that "[t]he weight of the case law provides that each notification of a consumer's dispute from a consumer reporting agency to a furnisher creates its own duties and corresponding limitations period"), *report and recommendation adopted*, No. 1:17-CV-3146-

---

[9] To the extent Defendant claims that Plaintiff has not properly alleged in her Complaint that PCMS received notices of the disputes from Experian (as opposed from her directly) Plaintiff states that her allegations in her Complaint were clear that in response to each of her disputes with Experian, she was advised that PCMS had "verified as accurate" the alleged debts owed. [See Dkt. 1, ¶¶15-18]. *See Grant v. Direct Gen. Ins. Co*., No. 1:17-CV-4205-TWT-JSA, 2018 U.S. Dist. LEXIS 221510, at *18-19 (N.D. Ga. Sep. 5, 2018)(finding that plaintiffs' allegation that he disputed information with a CRA created inference that CRA followed its statutory duty and reached out to furnisher to investigate dispute because, prior to discovery, plaintiff may not have had any other reason to know about the communications between these third-party companies.)

TWT, 2018 U.S. Dist. LEXIS 130493, 2018 WL 3708441 (N.D. Ga. Aug. 3, 2018). The *Thomas* court explained it as such:

> § 1681s-2(b) creates a new right of action each time the furnisher of information to consumer reporting agencies receives notice of a consumer's dispute from a consumer reporting agency ... [f]urnishers are thus required to investigate anew, even if they have previously investigated[, and i]t must follow that any new violation of this duty creates a new right of action, with its own limitations period.
> (. . . .)
> Defendant argues that Plaintiff's formulation would result in a "perpetual" statute of limitations, in which furnishers could never achieve finality with regard to their potential liability as to the reporting of an item of information. The Court disagrees. It remains that furnishers can only be sued for violations—and be liable for damages caused by violations—that occurred within two years prior to suit. If a furnisher on January 1, 2018, fails to properly resolve a consumer's claim of false information, then the furnisher will be definitively and forever safe from any suit based on that violation, by January 2, 2020. The furnisher will only face new exposure if, based on new disputes, it yet again fails to appropriately respond. And in that circumstance, any damages would be limited to what occurred within the new period. The Court therefore does not perceive how this circumstance effectuates a "perpetual" statute of limitations. Rather, it is Defendant's formulation that creates a perverse result. Furnishers would, essentially, be forever immunized for failing to address any new or ongoing disputes regarding a reported item, so long as two years have passed after the first time it failed to retract that item. Such a result is contrary to the statutory language and simply makes no sense.

*Id*. at 7-8.

The interpretation each that each consumer dispute does trigger a new imitations period for a possible FCRA violation is consistent with the consumer-protection, remedial purpose of the FCRA. *See Whitesides v. Equifax Credit Info. Servs.*, 125 F. Supp. 2d 807 (W.D. La. 2000); *Cortez v. Trans Union, LLC*, 617 F.3d 688, 721-22 (3d Cir. 2010) (explaining that FCRA is "a remedial statute that must be read in a liberal manner in order to effectuate the congressional intent underlying it").There is no language within the FCRA suggests that a consumer may seek a remedy under the statute for inaccurate reporting on *only* one occasion or that further challenges to the accuracy of information would be subject to the initial limitations period for the plaintiff's initial challenge pursuant to the statute. See 15 U.S.C. §§ 1681p, 1681s-2(b).

Accordingly, while Plaintiff's October 2017 dispute may be beyond the statute of limitations, it is clear that Plaintiff's May 2019, January 2021 and April 2021 disputes (and the damages she suffered due to Defendant's FCRA violations for these disputes) would be within the two-year statute of limitation (April 30, 2019-April 30, 2021).

E.    PCMS Did Breach Its Duties Imposed by 1681s-2(b)

PCMS further claims it is entitled to summary judgment because Plaintiff cannot establish that PCMS breached any of its duties under the FCRA. §1681s-2(b) requires careful inquiry by furnishers of information after receiving a consumer dispute from a credit reporting agency. In particular, this is true when a furnisher does not already possess evidence establishing that an item of disputed information is true, § 1681s-2(b) requires the furnisher to seek out and obtain such evidence before reporting the information as "verified." *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1303 (11th Cir. 2016) (citing *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004) (affirming jury verdict for consumer because a reasonable jury could find a violation of § 1681s-2(b) where the furnisher "d[id] not look beyond the information contained in the [internal data file] and never consult[ed] underlying documents such as account applications"). Here, as shown below, PCMS did breach its duties under §1681s-2(b)(1), including failing to conduct a reasonable investigation with respect to the disputed information provided by Plaintiff and failing to review all relevant information provided by the consumer reporting agency.

1.    The Information Furnished to Experian by PCMS's Regarding the PCMS Accounts Was Inaccurate and PCMS's Motion Relies Solely Upon Conclusory Assumptions and Hearsay and Has Provided No Evidence That Plaintiff Was Actually Responsible for the Debts Reported

Defendant claims that it is entitled to summary judgment because Plaintiff cannot prove that PCMS's reporting regarding the accounts was inaccurate as required under §1681s-2(b). In support of its position that its reporting was accurate, PCMS relies solely upon the affidavit of Mr.

Shah, who (1) has no personal knowledge of whether Plaintiff actually received services from physicians employed by Incare, (2) has produced no documents showing that Plaintiff was responsible for the debt (despite claiming that Incare has such documents) and (3) whose affidavit and attached exhibits [Dkt. 23-7, ¶¶5-6, Ex. A-B] should not even be considered for the reasons explained above in Section III.B of this Response.[10].

On the other hand, Plaintiff testified that she never received any services at St. Mary's Medical Center ("St. Mary's") from "rounding physicians" employed by or whose services were billed by Incare. [Dkt. 23-4, 27:13-15]. Plaintiff also testified she never received any bills from Incare at any point and had never even heard of Incare until the name appeared on her credit report years later. [Dkt. 23-4, 30:14-22, 31:21-32:8]. Plaintiff's testimony was that her doctor at St. Mary's was Dr. Williker. [Dkt. 23-4, 31:10-12]. Dr. Williker is not among the physicians listed and Defendant has provided no evidence that any of these physicians actually saw and/or provided services to Plaintiff during her stay at St. Mary's and/or that any of these physicians was performing rounding services for Dr. Williker. [*See*, Dkt. 23-5, 9:16-10:17, 20:21-21:6; Dkt. 23-7, ¶¶5-6, Ex. A-B]. Not a single document showing that Plaintiff agreed to be responsible for the debts for these alleged accounts from Incare/PCMS have ever been produced in discovery in this matter and none are attached to Defendant's Motion.[11] At this point, it is doubtful such documents even exist. At summary judgment the Court must take the non-movants facts—Plaintiff's—as true. *Losch v. Nationstar Mortg. LLC,* 995 F.3d 937, 944 (11th Cir. 2021). Accordingly, Plaintiff has

---

[10] Defendant also relies upon PCMS' response to interrogatories [Dkt. 23-6, #8], which contains the same list of alleged physicians as is contained on Dkt. 23-7, Ex.-B.

[11] While she was disputing the credit reporting on these accounts Plaintiff requested that both Incare and PCMS provide her with copies of her of documents supporting their contention that the debts were hers, but neither company ever responded and/or provided her with any such documents. [Dkt. 23-4, 32:13-33:2, 33:15-22, 131:25-132:24]. PCMS claims it sent Plaintiff a debt validation letter but admits that it does not have a copy of the letter and Plaintiff denies receiving such a letter. [Dkt. 23-4, 32:9-12; 75:9-17; Dkt. 23-5, 12:6-19].

established that the information furnished to Experian by PCMS regarding the 13 accounts was inaccurate.

2. PCMS Failed to Conducted a Reasonable Investigation of Plaintiff's Disputes

Defendant next claims that it is entitled to summary judgment because it conducted a reasonable investigation of Plaintiff's disputes.[12] Unlike section 1681i, which allows a CRA to terminate its investigation under certain circumstances if the consumer fails to provide it with sufficient information, section 1681s-2(b) contains no similar provision, and a furnisher must still meet its duty to conduct a reasonable investigation even if the consumer fails or refuses to provide it with requested documentation. *Hinkle*, 827 F.3d at 1303. While the FCRA does not contain specific standards or procedures for PCMS' investigation, courts consistently have adopted the "reasonable investigation" standard that requires that the furnisher conduct a substantive inquiry "to determine whether the disputed information can be verified." *Johnson*, 357 F.3d at 431; *see also Hinkle, supra.*

The reasonable investigation standard is not satisfied by the blatantly inadequate industry practice of conducting a mere "data conformity" review that simply confirms that the disputed information in the credit reporting agencies computer accurately reflects the information in the furnisher's computer that generated the report in the first place. *See, e.g., Brim v. Midland Credit Mgmt., Inc.*, 795 F. Supp. 2d 1255 (N.D. Ala. 2011) (describing furnisher's conduct (which was same as PCMS's) as "reprehensible" in approving jury's punitive damage award for the consumer;

---

[12] A "reasonable investigation" is the same standard as is applicable to CRAs under section 1681i. 12 C.F.R. Pt. 1022, Appx. E, § I.(b)(3); 16 C.F.R. Pt. 660, Appx. E, § I.(b)(3). A "reasonable investigation" is also the standard required of creditors responding to a formal dispute under the Fair Credit Billing Act. 12 C.F.R. § 1026.13(f).

"[T]he defendant's system, when a consumer disputes a debt, 95% of such disputes are checked by a computer merely making sure the disputed debt is the same as the information defendant has in its system already. Upon such review, defendant then asserts the debt is valid each and every time.").

Here, the record shows that PCMS did not conduct a reasonable investigation as required under the statute as follows:

(1)  In October 2017, Plaintiff initially disputed 28 PCMS accounts with Experian via letter and online, claiming that these accounts were not hers. [Dkt. 23-5, 18:2-13; Dkt. 23-9, Bates Nos. EXP-FOWLER-002081-002107].

(2)  Experian then sent PCMS ACDVs on the 28 disputed accounts and PCMS was only able to verify the accuracy of 13 of the accounts, which resulted in Experian deleting over half (15 of the 28) of PCMS accounts being reported on Plaintiff's credit reports and file. [Dkt. 23-10, Bates Nos. EXP-FOWLER-001843-001845].

(3)  PCMS's inability to verify the majority of the accounts it was reporting to Experian should have been a major red flag to PCMS that its reporting was inaccurate. However, instead of doing further any independent investigation, PCMS then "investigated" Plaintiff's May 2019 and January 2021 disputes that the remaining 13 PCMS accounts were not hers by just verifying that the demographic information for Plaintiff in its database matched the demographic information for Plaintiff in Experian's database – which of course it would because PCMS provided that information to Experian. [Dkt. 23-5, 23:17-24:4, 27:7-21].

(4)  PCMS admits that it did no investigation beyond verifying the demographic information for the accounts. [Dkt. 23-5, 28:1-6]. PCMS admits that it never even contacted Incare to see if it had any documents supporting the alleged debts. [Dkt. 23-5, 9:16-10:17]. Such an investigation would not have been unduly burdensome or costly for PCMS to do, as it only would have required making a telephone call.

(5)  PCMS further admits that it did not even follow its own investigation procedures in regard to Plaintiff's disputes. Specifically, PCMS admits that when consumer disputed an account as "001"/"not his or hers," it was PCMS's procedure is to send a letter to the consumer showing the information PCMS had in its system and inviting the consumer to provide further information. [Dkt. 23-5, 33:7-34:8]. Even though PCMS admits that Plaintiff disputed the information on the PCMS accounts on numerous occasions using that "001" code, PCMS admits that never sent any letter(s) to Plaintiff to verify the debt. [Dkt. 21-1, ¶¶ 9, 10, and 12; Dkt. 23-5, 34:9-12].

Accordingly, a reasonable factfinder could infer that PCMS actions/omissions in

investigating Plaintiff's disputes were unreasonable **as it did even not follow its own procedures which required it to seek verification from the Plaintiff when receiving a dispute claiming the account at issues was "not his or hers."** *See Hinkle,* 827 F.3d at 1307 ("reversing summary judgment and finding that reasonable jury could find that down-the-line buyer (such as PCMS) actions were unreasonable when it reported the disputed accounts as "verified" without obtaining sufficient documentation that the debts in fact belonged to the plaintiff). PCMS's reasonable investigation must be a good faith effort to ascertain the truth and must answer the substance of Plaintiff's disputes and may not simply be a *pro forma* record review. *Id*. A reasonable investigation in these circumstances required PCMS to go beyond its own records and obtain information from a third-party. *Id*.; *Carlisle v. Nat'l Commer. Servs*., 2015 U.S. Dist. LEXIS 87600 (N.D. Ga. July 7, 2015).

In *Hinkle*, the Eleventh Circuit recognized the difficulty that a "down-the-line-buyer" like PCMS may have in obtaining sufficient documentary evidence to prove that the information is true; however, the court stated that the proper response for furnishers who determine that the evidence necessary to verify disputed information either does not exist or is too burdensome to acquire" would be to "cease investigation and notify the CRAs that the information 'cannot be verified.'" 827 F.3d at 1303–1304. **The Court noted that "[t]his framework reflects the fact that § 1681-2(b) is designed not only to exclude false information from credit reports, but also to prevent the reporting of unverifiable information."** *Id*. (emphasis added).

Here, PCMS cannot show that any substantive investigation took place in this case of Plaintiff's 2019 and 2021 disputes of the 13 PCMS accounts. PCMS admits that it (1) made no attempt to ever contact Incare to retrieve documents supporting that these debts were Plaintiffs (which Incare claims to have), (2) that it did not follow its verification procedures when receiving

notice from Experian that Plaintiff was disputing that the 13 PCMS accounts were "not his or hers" and (3) cannot produce any evidence that the debts at issue even belonged to Plaintiff. [Dkt. 23-5, 9:16-10:17, 28:1-6, 34:9-12]. Despite being unable to actually verify the debts related to the PCMS accounts are Plaintiff's, PCMS just kept blindly confirming the debts by just verifying that the information matched the same information already in its system and did not investigate to resolve the issue of whether the debts assigned to it by Incare were actually Plaintiff's debts. Accordingly, the reasonableness of PCMS's investigation is a question of fact for jury determination and on this fact alone PCMS' motion for summary judgment should be denied. *Bush v. Roundpoint Mortg. Servicing Co*rp., 122 F. Supp. 3d 1347, 1351 n.3 (M.D. Fla. 2015); *see also Brim v. Midland Credit Mgmt., Inc.*, 795 F. Supp. 2d 1255 (N.D. Ala. 2011).

3.      Plaintiff Has Established Both Actual Damages and that She is Entitled to Damages for PCMS's Willful Violation of the FCRA

Defendant further claims that it is entitled to summary judgment because Plaintiff cannot establish damages due its violations of §1681s-2(b). The FCRA allows recovery for negligent violations pursuant to § 1681o, and willful violations pursuant to § 1681n.[13] *Haws v. Santander Consumer USA, Inc*., No. 1:19-cv-1332-MHC-JKL, 2019 U.S. Dist. LEXIS 235167, at *23 (N.D. Ga. Oct. 18, 2019). If any damages are awarded, costs and reasonable attorney fees may also be recovered. §1681n(a)(2), §1681o(a)(3).

"Actual damages" for an FCRA violation include both economic damages as well as noneconomic damages such as emotional distress. *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1124-25 (11th Cir. 2006). Here, Plaintiff has presented significant evidence of her

---

[13] Recovery for a negligent violation of the FCRA is limited to the amount of actual damages and attorneys' fees and costs. 15 U.S.C. § 1681o. If the breach is willful, however, the plaintiff is entitled to recover either actual damages or statutory damages (from $ 100-$ 1,000), whichever is greater, in addition to attorneys fees and costs. The Court may also impose punitive damages to punish a willful violation of the FCRA. 15 U.S.C. § 1681n.

actual damages suffered within the statute of limitations due to PCMS violations of §1681s-2(b), including:

(1)    Plaintiff was denied new credit opportunities due the erroneous credit reporting by Defendant, including being denied credit card with JC Penny in 2019. [Dkt. 23-16, Response to Interrogatory #20 – Request #2; Dkt. 23-4, 93:17-94:4]. She also applied for a credit card and was only approved for a secured credit card which required a deposit. [Dkt. 23-4, 96:17-97:6]. Lenders advised her that she was being denied credit due to "open collections" and "low credit score." [Dkt. 23-4, 98:9:-13]. Plaintiff testified that as soon as the 13 PCMS accounts were finally removed by Experian in 2021, she began to be offered credit opportunities again. [Dkt. 23-4, 98:17-99:8].

(2)    In 2020, Plaintiff was initially denied insurance with Progressive Insurance but was later able to be insured by Progressive, but at a substantially increased rate from her previous rate. [Dkt. 23-16, Response to Interrogatory #20 – Request #4]. Progressive advised her that the increased insurance rate was due to "open collections" in her credit reporting [Dkt. 23-4, 92:8-20]. Plaintiff was also denied insurance by State Farm Insurance and Infinity Insurance. [Dkt. 23-16, Response to Interrogatory #20 – Request #3].[14]

(3)    Plaintiff has suffered humiliation/embarrassment, emotional distress and worry about being rejected when applying for credit due to the inaccurate credit reporting

---

[14] While Defendant claims that Plaintiff cannot establish that any credit or insurance denials and/or raised rates Plaintiff has identified were related to their erroneous reporting regarding the PCMS accounts, it is undisputed that (1) Plaintiff was told when she was denied credit and insurance that it was due to "open collections," [Dkt. 23-4, 92:8-20, 98:9:-13] (2) Experian was reporting all of the PCMS as open accounts in "collection" from November 2017 through when accounts were removed in 2021. [Dkt. 23-12, EXP-FOWLER 001402-001407; Dkt. 23-13, EXP-FOWLER 001592-001597], and (3) and none of the other credit reporting agencies other than Experian were reporting the PCMS accounts. [Dkt. 23-4, 85:17-87:14].

Defendant's motion sets forth hypothetical reasons (Plaintiff's driving record, other credit denials, etc.) why these events could have occurred but has provided no actual evidence in support of its Motion showing that Plaintiff was denied by these creditors and/or insurance for some other reason. *Eller v. Experian Info. Solutions, Inc.*, Civil Action No. 09-cv-00040-WJM-KMT, 2011 U.S. Dist. LEXIS 85776, at *9 (D. Colo. Aug. 4, 2011)(denying summary judgment to Trans Union in mixed file claim because "[t]here is no evidence on the record showing that Bank of America denied Plaintiff's credit for a reason other than the NCO Financial account [which belonged to a third party] in Plaintiff's Trans Union credit file"). The FCRA does not require the defendant's conduct to be the *sole* cause of losses, but merely an "actual" cause. *Philbin v. Trans Union Corp.*, 101 F.3d 957, 969 (3d Cir. 1996)("[c]ourts have recognized that where a decision-making process implicates a wide range of considerations, all of which factor into the ultimate decision, it is inappropriate to saddle a plaintiff with the burden of proving that one of those factors was the cause of the decision.") Accordingly, Plaintiff has provided sufficient evidence that Defendant's actions were an actual" reason for her damages related to credit and insurance denials and increased rates. *See Martinez v. Vericrest Fin.*, 2015 WL 347679 (E.D. Wis. Jan. 26, 2015) (denying summary judgment to defendant where interest rates increased after loan denial caused by credit reporting error).

by Defendant and has a fear of being denied due to the incorrect reporting. Plaintiff has suffered emotional and mental anguish, frustration, humiliation, embarrassment from the inaccurate reporting. [Dkt. 23-16, Response to Interrogatory #18; Dkt. 23-4, 100:5-19; 106:20-24]. The issues with the credit reporting regarding the PCMS accounts has also cause her embarrassment in front of her family and friends, including her son, because she seemed unable to care for herself. [Dkt. 23-4, 103:8-20].

This has manifested itself in sleeplessness, heart palpitations, feelings of being sick/ill, crying, feelings of intense anger and sadness, depression, irritability, fear and hopelessness, concern for her ability to provide for herself, among other emotions. [Dkt. 23-16, Response to Interrogatory #18].

Starting in 2020, Plaintiff has been receiving weekly therapy/PTSD counseling from therapist Catherine Doe [Dkt. 23-4, 109:14-110:13]. She did not see a therapist before the PCMS reports were reported on her account. [Dkt. 23-4, 111:16-20]. Plaintiff testified that she has been going to PTSD therapy solely because of the credit reporting issue [Dkt. 23-4, 101:25-102:11].[15]

While Plaintiff has provided sufficient evidence of her actual damages, even in the absence of proof of actual damages, PCMS may still be liable because "[a]ctual damages are not a statutory prerequisite to punitive damages" under the FCRA. *Rambarran v. Bank of Am., N.A.*, 609 F. Supp. 2d 1253, 1270 (S.D. Fla. 2009). To establish a willful violation, Plaintiff must show that PCMS "either knowingly or recklessly violated" the FCRA. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007). A company violates the FCRA where its action, based on a reading of the statute's terms, is more than "merely careless" and, instead, it engages in conduct which amounts to an "objectively unreasonable" view of the company's duties under the statute. *Id.* [16]

Here, as discussed above in greater detail in Section III.E.(2), the record shows that

---

[15] Even if the Court was to find Plaintiff's evidence of credit and insurance denials and higher rates to be unavailing, an FCRA claim can survive summary judgment so long as there is sufficient proof of emotional injury. *Crane v. Trans Union, LLC*, 282 F. Supp. 2d 311, 319 (E.D. Pa. 2003).

[16] In FCRA cases, punitive damages may be awarded for noncompliance with its provisions even when a defendant does not exhibit malice or evil motive in violating the Act. *See Dalton v. Capital Associated Indus., Inc*., 257 F.3d 409, 418 (4th Cir. 2001); *Cousin v. Trans Union Corp*., 246 F.3d 359, 372 (5th Cir. 2001) ("Malice or evil motive need not be established for a punitive damages award [in FCRA cases], but the violation must have been willful.").

PCMS's conduct was "objectively unreasonable" in regard to its duties under the statute as follows:

(1)     In October 2017, Plaintiff initially disputed 28 PCMS accounts with Experian via letter and online, claiming that these accounts were not hers. [Dkt. 23-5, 18:2-13; Dkt. 23-9, Bates Nos. EXP-FOWLER-002081-002107].

(2)     PCMS was only able to verify 13 of the 28 disputed accounts which resulted in Experian deleting over half (15 of the 28) of PCMS accounts being reported on Plaintiff's credit reports and file. [Dkt. 23-10, Bates Nos. EXP-FOWLER-001843-001845].

(3)     Instead of doing further any independent investigation, PCMS then "investigated" Plaintiff's May 2019 and January 2021 disputes by just verifying that the demographic information for Plaintiff already in its database matched the demographic information for Plaintiff already in Experian's database. [Dkt. 23-5, 23:17-24:4, 27:7-21].

(4)     PCMS admits that it did no further investigation beyond verifying the demographic information for the accounts, even though such an investigation would not have been unduly burdensome or costly for PCMS to do, as it only would have required making a telephone call and/or sending an email to Incare for documents verifying that the debt was Plaintiff's. [Dkt. 23-5, 9:16-10:17, 28:1-6].

(5)     PCMS further admits that it did not even follow its own investigation procedures in regard to Plaintiff's disputes and never sent any letter(s) to Plaintiff to verify the debt when she reported the 13 PCMS accounts as been "001"/"not his or hers". [Dkt. 23-5, 33:7-34:12; Dkt. 21-1, ¶¶ 9, 10].

Accordingly, a reasonable factfinder could infer that PCMS actions/omissions in investigating Plaintiff's disputes were willful as it did even not follow its own procedures which required it to seek verification from the Plaintiff when receiving a dispute claiming the account at issues was "not his or hers.". *See Hinkle,* 827 F.3d at 1307 ("reversing summary judgment and finding that reasonable jury could find that down-the-line buyer (such as PCMS) willfully violated § 1681s-2(b) when it reported the disputed accounts as "verified" without obtaining sufficient documentation that the debts in fact belonged to Plaintiff).(11th Cir. 2016)

F.      Plaintiff Has Presented Sufficient Evidence to Establish a *prima facie* claim under 15 U.S.C.S. § 1681s-2(b)

As shown above, Plaintiff has presented sufficient evidence to support a claim against PCMS under 1681s-2(b). It is undisputed that Plaintiff notified a consumer reporting agency (Experian) that she disputed the accuracy of information in her credit report and that Experian gave notice of the dispute to the appropriate furnisher, PCMS. [Dkt. 21-1, ¶¶ 7-9, 11-12; Dkt. 23-5, 18:2-13, 22:5-16, 23:6-16, 26:17-27:6]. Plaintiff has also established that PCMS (1) failed to conduct a reasonable investigation of the identified dispute and (2) failed to review all of the relevant information provided by the CRA. [*See* Section III.E(1), (2) above]. Plaintiff has also established facts showing the information reported was inaccurate and that Plaintiff was damaged as a result of the erroneous reporting. [*See* Section III.E(1), (3) above]. Accordingly, Defendant's Motion should be denied.

WHEREFORE, Plaintiff Angelia Fowler hereby respectfully requests that the Court enter an order denying Defendant Preferred Collection Management Service's Motion for Summary Judgment on Count IV of Plaintiff's Complaint and any other relief the Court deems just and appropriate under the circumstances.

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2022 a true and correct copy of the foregoing  was served via the Court's CM/ECF electronic filing system. The CM/ECF system  will forward a Notice to all interested parties.

Respectfully Submitted,
*s/Dennis A. Creed, III*
Dennis A. Creed, III, Esq.
Florida Bar No. 0043618
Email: dcreed@creedlawgroup.com
Creed Law Group, PLLC d/b/a Creed & Hall
13043 West Linebaugh Avenue
Tampa, FL 33626
Telephone: (813) 444-4332
Fax: (813) 441-6121