**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ANGELIA FOWLER,

      Plaintiffs,

v.                             Case No. 8:21-CV-01038-WFJ-AAS

EXPERIAN INFORMATION SOLUTIONS, INC.
and PREFERRED COLLECTION AND
MANAGEMENT SERVICES, INC,

      Defendants.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT**
**EXPERIAN'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56, Local Rule 3.01 and this Court's June 29, 2021 Order [Dkt. 15], Plaintiff Angelia Fowler ("Plaintiff") hereby submits her Response in Opposition to Defendant Experian Information Solutions, Inc.'s ("Defendant" or "Experian") Motion for Summary Judgment ("Motion") [Dkt. 22].

**I.     GROUNDS FOR OPPOSITION**

It is clear that pursuant to Fed. R. Civ. P. 56, Defendant's Motion on Counts I, II and III of Plaintiff's Complaint[1] should be denied because:

1.  Defendant's Motion fails to establish that there are no genuine issues of material fact;

2.  Plaintiff claims in Counts I, II and III are not barred by the statute of limitations;

3.  Experian's reporting regarding the PCMS Accounts was inaccurate and Experian relies solely upon conclusory assumptions and hearsay and has provided no evidence that Plaintiff was actually responsible for the debts reported;

4.  Experian's procedures in investigating Plaintiff's disputes were unreasonable;

---

[1] Count I is claim for violation of 15 U.S.C. § 1681i of the Fair Credit Reporting Act ("FCRA"). Count II is a claim for violation of 15 U.S.C. § 1681e(b) of the FCRA. Count III is a claim for violation of 15 U.S.C. § 1681i(a)(5) of the FCRA. [Dkt. 1].

5. Experian did act willfully in failing to properly reinvestigate Plaintiff's disputes, but concedes its actions were at least negligent;

6. Plaintiff has established she suffered actual damages for Experian's violation of the FCRA; and

7. Plaintiff has presented sufficient evidence to establish *prima facie* claims under 15 U.S.C.S. §1681e and 15 U.S.C.S. §1681i

In addition, Plaintiff objects pursuant to Fed. R. Civ. P. 26 and Fed. R. Civ. P. 56 that Defendant should not be allowed to rely upon the Affidavit of Raj Shah [Dkt. 23-7] because (1) neither Mr. Shah and/or Incare was ever identified by Experian as a potential witness in discovery and (2) the Exhibits attached to Mr. Shah's Affidavit are not admissible.

## II.   RESPONSE TO "FACTUAL BACKGROUND" [2]

In response to the claims made in lines 3:6-16 of the Motion [Ex. A, 3:6-16], Plaintiff restates her responses to Paragraphs 4, 5, 6, and 7 of her Statement of Disputed Facts.

In response to the claims made in lines 3:17-4:5 of the Motion [Ex. A, 3:17-4:5], Plaintiff restates her responses to Paragraphs 8, 9, and 10 of her Statement of Disputed Facts.

In response to the claims made in lines 4:6—4:14 of the Motion [Ex. A, 4:6—4:14], Plaintiff restates her responses to Paragraphs 11, 12, 13, 14, 15, and 16 of her Statement of Disputed Facts.

In response to the claims made in lines 4:16-18 of the Motion [Ex. A, 4:16—4:18], Plaintiff restates her responses to Paragraph 18 and 19 of her Statement of Disputed Facts.

In response to the claims made in lines 4:19-5:9 of the Motion [Ex. A, 4:19-5:9], Plaintiff restates her response to Paragraph 17, 20, 21 and 22 of her Statement of Disputed Facts.

---

[2] Because Plaintiff is required to respond to the allegations in Defendants "Factual Background", which is a 4-page narrative, Plaintiff has listed the page:line(s) of Defendant's Motion for the Court's ease in tracking Plaintiff's responses. Exhibit A to Plaintiff's Response is a copy of the Motion with the line numbers added.

In response to the claims made in lines 5:10-13 of the Motion [Ex. A, 5:10-13], Plaintiff restates her responses to Paragraphs 23 and 24 of her Statement of Disputed Facts.

In response to the claims made in lines 5:14-18 of the Motion [Ex. A, 5:14-18], Plaintiff restates her responses to Paragraphs 25 and 26 of her Statement of Disputed Facts.

In response to the claims made in lines 5:19-6:2 of the Motion [Ex. A, 5:19-6:2], Plaintiff restates her responses to Paragraphs 27 and 28 of her Statement of Disputed Facts.

In response to the claims made in lines 6:4-8 of the Motion [Ex. A, 6:4-8], Plaintiff restates her responses to Paragraphs 2 and 3 of her Statement of Disputed Facts.

In response to the claims made in lines 6:8-10 of the Motion [Ex. A, 6:8-10], Plaintiff admits the allegations.

## III.   MEMORANDUM OF LAW

### A.   <u>Defendant's Motion Fails to Establish That There Are No Genuine Issues of Material Fact</u>

Initially, Defendant is not entitled to summary judgment on its Motion on Counts I, II and III of Plaintiff's Complaint and its Motion should be denied because Defendant has failed to show that there are no genuine issues as to any material facts.[3] Here, there are several genuine issues of material fact in question, including but not limited to, whether or not Defendant's reporting was accurate, whether Defendant's investigations were reasonable and whether Defendant acted willfully. Accordingly, just due to numerous disputed issues of material fact, Defendant's Motion

---

[3] Material facts are those over which disputes "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Disputes about material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

should be denied. Furthermore, as shown below, Defendant has also failed to establish it is entitled to summary judgment on Counts I, II and III as a matter of law. [4]

     B.     <u>Defendant Should Not be Allowed to Rely Upon Affidavit of Raj Shah [Dkt. 23-7]</u>

As an initial matter, pursuant to Fed. R. Civ. P. 26 and Fed. R. Civ. P. 56, Plaintiff objects to the affidavit of Raj Shah, acting as "custodian of records" for Incare Medical Services, Inc. ("Incare") [ [Dkt. 23-7]. Mr. Shah's affidavit and the attached exhibits should not be considered because (1) Experian failed to identify him or Incare as potential witness in this matter and (2) the exhibits to his affidavit (Exhibits A and B) are not admissible.

     1.     <u>Neither Mr. Shah and/or Incare was Ever Identified by Experian as a Potential Witness in Discovery'</u>

Generally, each party is required to provide the name of any individual who is likely to have discoverable information that the disclosing party may use to support its claims or defenses. *See* Fed.R.Civ.P. 26(a)(1)(A)(I). In this regard, parties have an ongoing obligation to supplement or correct information that has been disclosed. *See* Fed.R.Civ.P. 26(e)(1). "If a party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1).

Here, Experian failed to identify Mr. Shah and/or Incare as a potential witness, as required by Rule 26(a) or 26(e). While Experian served Rule 26 Initial Disclosures on Plaintiff, it did not

---

[4] To state a claim under § 1681e, the plaintiff must show that the agency's report contained factually inaccurate information, that the procedures it took in preparing and distributing the report weren't "reasonable," and that damages followed as a result. *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 944 (11th Cir. 2021) (citing *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1157, 1160 (11th Cir. 1991) and *Nagle v. Experian Info. Sols., Inc.*, 297 F.3d 1305, 1307 (11th Cir. 2002)). "The elements of a claim under [section] 1681i — which focuses on the consumer's credit 'file' rather than his credit 'report'— are the same, except that the plaintiff needn't show that the agency prepared and distributed a report." *Id.* (citing *Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1335 (11th Cir. 2015).

identify Mr. Shah or Incare and also failed to identify these witnesses in discovery. [See Ex. B, Section A, pg. 1-2; Ex. C, Response to Interrogatory #5, pg. 6]. Accordingly, pursuant to Fed. R. Civ. P. 26, Mr. Shah's affidavit should not be considered as neither he nor Incare was ever identified as a witness by Experian.

2.    <u>The Exhibits Attached to Mr. Shah's Affidavit are Not Admissible</u>

On a motion for summary judgment, the Court "may consider only that evidence which can be reduced to an admissible form." *Rowell v. Bellsouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005). A document may be admissible as a business record "if it was made at or near the time by — or from information transmitted by — someone with knowledge; if it was kept in the course of regularly conducted activity; and if making the record was a regular practice of that activity." *In re Int'l Mgmt. Assocs., LLC*, 781 F.3d 1262, 1266 (11th Cir. 2015); Fed. R. Evid. 803(6). These requirements may be established through the testimony of the custodian or other qualified witness who can explain the record keeping procedures utilized by the business to create the business records. *Id*. at 1266, 1268. "It is sufficient that the witness be able to **identify the record as authentic and specify that it was made and preserved in the regular course of business**." *United States v. Langford*, 647 F.3d 1309, 1327 (11th Cir. 2011) (quoting United States v. Atchley, 699 F.2d 1055, 1058 (11th Cir. 1983)).(emphasis added).

Here, Mr. Shah's affidavit fails to establish that Exhibits A and B to his affidavit meet the requirements of the business records exception. Mr. Shah's affidavit just generally parrots the language of Fed. R. Evid. 803(6) and fails to truly explain the Incare's record keeping procedures utilized to create the business records and/or explain the procedures for keeping records. [Dkt. 23-7, ¶¶3-4]. In fact, Mr. Shah's affidavit fails to establish that Exhibits A and B were (1) records made at or near time by someone with knowledge, (2) kept in the course of Incare's regularly

conducted activity (3) that making such records/lists was a regular practice of Incare and (4) that Exhibits A and B are accurate copies of Incare's business records.[5]

The lack of information provided by Mr. Shah regarding Incare's preparation and maintenance of alleged records such as Exhibit A and B indicate a lack of trustworthiness in these records, particularly when (1) neither Exhibit A nor Exhibit B mention Plaintiff by name and/or contain any information identifying Plaintiff as the debtor responsible in any way and (2) Incare claims to have maintained numerous other documents which would clearly identify Plaintiff as the debtor (such as "medical records," "billing records," and "signed consents"), but has failed to attach any of those documents to Mr. Shah's affidavit. [Dkt. 23-7, ¶4]. Accordingly for the reasons listed above, Mr. Shah's affidavit and Exhibits A and B to his affidavit [Dkt. 23-7; Dkt. 23-7, Ex. A and B] should not be considered by the Court in support of Defendant's Motion.[6]

C.    Plaintiff Claims in Counts I, II and III are Not Barred by the Statute of Limitations

Initially, Defendant claims that it is entitled to summary judgment on Plaintiff's claims under the FCRA (Counts I, II and III) because she did not file her lawsuit within 2 years of November 2017, which is when she received the result of her first dispute of the (then 28) PCMS accounts being reported. Defendant claims that this failure entitles it to summary judgment on all Plaintiff's claims.

---

[5] Mr. Shah's affidavit fails to specifically establish how documents like Exhibits A (a list of Plaintiff's alleged Incare accounts) and B (a list of alleged Incare providers who saw Plaintiff) are created and/or kept and fails to establish that creation of such lists is a regular practice of Incare. [Dkt. 23-7, ¶¶3-6]. Mr. Shah also does not claim that Exhibits A and B are authentic copies of Incare's business records, as he does not claim that these Exhibits are true and correct copies of the documents created and maintained by Incare. [Dkt. 23-7, ¶¶3-6].

[6] To the extent Mr. Shah's affidavit is considered, it is clear that Mr. Shah has no personal knowledge of whether Plaintiff actually received the services Incare claims she is responsible for. Mr. Shah does not allege he witnessed Plaintiff receive services from Incare. [Dkt. 23-7, ¶1-11]. Plaintiff denies she received any services (or bills) from Incare or that she was a patient seen by the providers listed in Exhibit B. [Dkt. 23-4, 27:13-15, 30:14-22, 31:10-12]. See Fed.R.Civ.P. 56 and Fed.R.Evid. 602.

The Eleventh Circuit has not addressed whether the limitations period in 15 U.S.C. § 1681p restarts each time a consumer submits a dispute concerning the same inaccurate information on a credit report. However, the federal district courts have reached differing results on this issue, **with the majority finding that each consumer dispute _does_ trigger a new duty to investigate and hence a new limitations period for a possible FCRA violation, even if the subsequent disputes concern the same allegedly inaccurate information**.[7] *See Milgram v. JPMorgan Chase Bank, N.A.*, No. 19-60929-CIV-CAN, 2021 U.S. Dist. LEXIS 248947, at *23 (S.D. Fla. Dec. 30, 2021); *Marcinski v. RBS Citizens Bank, N.A.*, 36 F. Supp. 3d 286, 291 (S.D.N.Y. May 2, 2014) (concluding that limiting claims to the first complaint regarding inaccurate information would be inconsistent with the language and intent of the FCRA and thus, each subsequent claim that there was a failure to adequately investigate triggers its own limitations period); *Maiteki v. Marten Transp. Ltd.*, 4 F. Supp. 3d 1249, 1254 (D. Colo. 2013) (*citing Larson v. Ford Credit*, No. 06-CV-1811 (JMR/FLN), 2007 U.S. Dist. LEXIS 47181, 2007 WL 1875989, at *2 (D. Minn. June 28,

---

[7] Compare *Owens v. TransUnion, LLC*, No. 4:20-CV-665-SDJ-KPJ, 2021 U.S. Dist. LEXIS 187044, 2021 WL 5086370, at *7-8 (E.D. Tex. Aug. 30, 2021*), report and recommendation adopted as modified*, No. 4:20-CV-665-SDJ-KPJ, 2021 U.S. Dist. LEXIS 186227, 2021 WL 4451890 (E.D. Tex. Sept. 29, 2021) (relying on the Fifth Circuit's opinion in *Hyde v. Hibernia Nat'l Bank*, 861 F.2d 446 (5th Cir. 1988) to conclude that each consumer dispute over an alleged inaccurate credit files give rise to a new limitations period), and *Ponder v. Ocwen Loan Servicing*, *LLC*, No. 1:16-CV-04125-ELR, 2021 U.S. Dist. LEXIS 211085, 2021 WL 5027495, at *9 (N.D. Ga. Aug. 4, 2021), and *Doss v. Great Lakes Educ. Loan Servs., Inc.*, No. 3:20CV45, 2021 U.S. Dist. LEXIS 61849, 2021 WL 1206800, at *11 (E.D. Va. Mar. 30, 2021), and *Ardoin v. Citibank N.A.*, No. 2:20-CV-01088, 2020 U.S. Dist. LEXIS 188067, 2020 WL 5997267, at *4 (W.D. La. Oct. 8, 2020), and *Bruce v. Homeward Residential, Inc.*, No. 1:14-CV-3325-MHC-AJB, 2015 U.S. Dist. LEXIS 138703, 2015 WL 5797846, at *9 (N.D. Ga. Aug. 31, 2015), and *Marcinski v. RBS Citizens Bank, N.A.*, 36 F. Supp. 3d 286, 291 (S.D.N.Y. May 2, 2014), and *Maiteki v. Marten Transportation Ltd.*, 4 F. Supp. 3d 1249, 1253 (D. Colo. 2013), and *Larson v. Ford Credit*, 2007 U.S. Dist. LEXIS 47181, 2007 WL 1875989 at *4 (D. Minn. June 28, 2007), and *Broccuto v. Experian Info. Solutions, Inc.*, 2008 U.S. Dist. LEXIS 37079, 2008 WL 1969222, at *4 (E.D. Va. May 6, 2008), and *Vasquez v. Bank of Am., N.A.*, 2015 U.S. Dist. LEXIS 154682, 2015 WL 7075628, at *3 (N.D. Cal. Nov. 13, 2015) with *Bittick v. Experian Info. Solutions, Inc.*, 419 F. Supp. 2d 917 (N.D. Tex. 2006), and *Blackwell v. Cap. One Bank*, No. 606CV066, 2008 U.S. Dist. LEXIS 23339, 2008 WL 793476, at *3 (S.D. Ga. Mar. 25, 2008), and *Solis v. CitiMortgage, Inc.*, 1:16-CV-20612-UU, 2018 U.S. Dist. LEXIS 1655, 2018 WL 10087064, at *4 (S.D. Fla. Jan. 3, 2018).

2007)).

The interpretation each that each consumer dispute does trigger a new duty to investigate and hence a new limitations period for a possible FCRA violation is consistent with the consumer-protection, remedial purpose of the FCRA. *See Whitesides v. Equifax Credit Info. Servs.*, 125 F. Supp. 2d 807 (W.D. La. 2000); *Cortez v. Trans Union, LLC*, 617 F.3d 688, 721-22 (3d Cir. 2010) (explaining that FCRA is "a remedial statute that must be read in a liberal manner in order to effectuate the congressional intent underlying it"). There is no language within the FCRA suggests that a consumer may seek a remedy under the statute for inaccurate reporting on *only* one occasion or that further challenges to the accuracy of information would be subject to the initial limitations period for the plaintiff's initial challenge pursuant to the statute. See 15 U.S.C. §§ 1681p, 1681s-2(b).

Accordingly, while Plaintiff's October 2017 dispute may be beyond the statute of limitations, it is clear that Plaintiff's May 2019, January 2021 and April 2021 disputes (and the damages she suffered due to Defendant's FCRA violations for these disputes) would be within the two-year statute of limitation (April 30, 2019-April 30, 2021).

D. Experian's Reporting Regarding the PCMS Accounts was Inaccurate and Experian Relies Solely Upon Conclusory Assumptions and Hearsay and has Provided No Evidence that Plaintiff was Actually Responsible for the Debt

Defendant next claims that it is entitled to summary judgment because Plaintiff cannot prove that Experian's reporting regarding the accounts was inaccurate as required under §1681e(b) and §1681i(a).[8] In support of its position that its reporting was accurate, Experian relies solely upon the conclusory assumptions of several corporate representatives who have no personal

---

[8] Although it is not explicitly stated, Experian's Motion concedes the fact that Experian prepared and distributed credit reports to third parties containing the information disputed regarding the PCMS accounts. [See Dkt. 22, pg. 12-16; see also Dkt. 23-12, EXP-FOWLER-0011410; Dkt. 23-13, EXP-FOWLER-001599].

knowledge of whether Plaintiff actually received services from Incare. Specifically, Defendant relies upon the testimony of Matthew Kiefer, the corporate representative for Defendant Preferred Collection Management Systems, Inc. ("PCMS"), who admitted that (1) PCMS has never communicated with Incare to determine if the services Incare charged to Plaintiff were actually provided to Plaintiff, and (2) that PCMS has no documentation which Plaintiff signed for any of the services/debts that PCMS was attempting to collect on behalf of Incare. [Dkt. 23-5, 9:16-10:17, 20:21-21:6]. Defendant also relies upon the affidavit of Mr. Shah who (1) has no personal knowledge of whether Plaintiff actually received services from physicians employed by Incare, (2) has produced no documents showing that Plaintiff was responsible for the debt (despite claiming that Incare has such documents) and (3) whose affidavit and attached exhibits [Dkt. 23-7, ¶¶5-6, Ex. A-B] should not even be considered for the reasons explained above in Section III.B of this Response.[9][10].

On the other hand, Plaintiff testified that she never received any services at St. Mary's Medical Center ("St. Mary's") from "rounding physicians" employed by or whose services were billed by Incare. [Dkt. 23-4, 27:13-15]. Plaintiff also testified she never received any bills from Incare at any point and had never even heard of Incare until the name appeared on her credit report years later. [Dkt. 23-4, 30:14-22, 31:21-32:8]. Plaintiff's testimony was that her doctor at St. Mary's was Dr. Williker. [Dkt. 23-4, 31:10-12]. Dr. Williker is not among the Incare physicians listed and Defendant has provided no evidence that any of these Incare physicians actually saw and/or provided services to Plaintiff during her stay at St. Mary's and/or that any of these

[9] Defendant also relies upon PCMS' response to interrogatories [Dkt. 23-6, #8], which contains the same list of alleged physicians as is contained on Dkt. 23-7, Ex.-B.
[10] Experian's own corporate representative admitted that (1) Experian never reached out to PCMS to see if they had any original documents regarding the alleged debt and (2) Experian has no knowledge of whether Plaintiff ever actually received a bill from any creditor for any of the 13 accounts on which it reported. [Dkt. 23-8, 32:6- 18].

physicians was performing rounding services for Dr. Williker. [*See*, Dkt. 23-5, 9:16-10:17, 20:21-21:6; Dkt. 23-7, ¶¶5-6, Ex. A-B]. Not a single document showing that Plaintiff agreed to be responsible for the debts for these alleged accounts from Incare or PCMS have ever been produced in discovery in this matter and none are attached to Defendant's Motion.[11] At this point, it is doubtful such documents even exist. At summary judgment the Court must take the non-movants facts—Plaintiff's—as true. *Losch v. Nationstar Mortg. LLC,* 995 F.3d 937, 944 (11th Cir. 2021). Accordingly, Plaintiff has established that Experian's reporting was inaccurate.

In addition, Plaintiff's dispute was not regarding a "legal inaccuracy" as Experian claims in its Motion. In fact, the cases cited by Experian supporting this claim are clearly distinguishable from Plaintiff's disputes regarding the PCMS accounts.[12] Plaintiff's dispute was not regarding a "legal inaccuracy" that required some determination. Plaintiff's dispute was that she was not the debtor responsible for the accounts, which was a claim for factual inaccuracy.

E.    Experian's Procedures in Investigating Plaintiff's Disputes Were Unreasonable

Experian further claims that it is entitled to summary judgment because Plaintiff cannot show that its procedures in investigating her disputes were unreasonable. One of the most critical protections provided by the FCRA is the consumer's right to dispute the accuracy or completeness

---

[11] While she was disputing the credit reporting on these accounts Plaintiff requested that both Incare and PCMS provide her with copies of her of documents supporting their contention that the debts were hers, but neither company ever responded and/or provided her with any such documents. [Dkt. 23-4, 32:13-33:2, 33:15-22, 131:25-132:24]. PCMS claims it sent Plaintiff a debt validation letter but admits that it does not have a copy of the letter and Plaintiff denies receiving such a letter. [Dkt. 23-4, 32:9-12; 75:9-17; Dkt. 23-5, 12:6-19].

[12] In *Denan v. Trans Union LLC*, 959 F.3d 290, 292 (7th Cir. 2020) the consumer's dispute was that a loan he had taken was "illegally issued" and so "there was no legal obligation for [him] to repay." In *Humphrey v. Trans Union LLC*, 759 F. App'x 484, 485 (7th Cir. 2019) the consumer's dispute was that he was not required to make payments on his student loans because his disability-discharge applications required the student-loan servicer to cease collections, which required a legal determination. In *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 882 (9th Cir. 2010) the consumer disputed a debt that arose from a bill she claimed her insurance company "wrongfully refused to pay". In *Sessa v. Linear Motors, LLC*, No. 19-CV-9914 (KMK), 2021 U.S. Dist. LEXIS 242516, at *23 (S.D.N.Y. Dec. 20, 2021) the consumer disputed that the loan was a sham under the Truth in Lending Act and Consumer Leasing Act.

of any item of information in their file. 15 U.S.C. § 1681i(a)(1)(A). Upon receipt of the Plaintiff's dispute, Experian was required to review and consider the information provided by the Plaintiff (15 U.S.C. § 1681i(a)(4)), forward all relevant information to PCMS who furnished the information (15 U.S.C. § 1681i(a)(2)), and conduct its own "reasonable reinvestigation" to determine the accuracy or completeness of its reporting. 15 U.S.C. § 1681i(a)(1)(A).[13] Underlying the "reasonableness" of a CRA's compliance with its FCRA "accuracy" duties is a two-step balancing test used expressly or implicitly by nearly every court to apply the statute. The balancing test was formulated by the Seventh Circuit in *Henson v. CSC Credit Serv.*, 29 F.3d 280 (7th Cir. 1994) and states:

> Whether the credit reporting agency has a duty to go beyond the original source will depend, in part, on whether the consumer has alerted the reporting agency to the possibility that the source may be unreliable or the reporting agency itself knows or should know that the source is unreliable. The credit reporting agency's duty will also depend on the cost of verifying the accuracy of the source versus the possible harm inaccurately reported information may cause the consumer.

Here, the record shows that Experian's "investigation" of Plaintiff's May 2019 and January 2021 disputes was unreasonable under the statute as follows:

(1)      In October 2017, Plaintiff initially disputed 28 PCMS accounts with Experian via letter and online, claiming that these accounts were not hers. [Dkt. 23-9, Bates Nos. EXP-FOWLER-002081-002107].

(2)      Experian then sent PCMS ACDVs on the 28 disputed accounts and PCMS was only able to verify the accuracy of 13 of the accounts, which resulted in Experian deleting over half (15 of the 28) of PCMS accounts being reported on Plaintiff's credit reports and file. [Dkt. 23-9, Bates Nos. EXP-FOWLER-002081-002107; Dkt. 23-10, Bates Nos. EXP-FOWLER-001843-001845].

---

[13] An "investigation" is defined in the dictionary as a "detailed inquiry or systematic examination." See Merriam-Webster Online Dictionary (2021), https://www.merriam-webster.com (defining "investigate" as "to observe or study by close examination and systematic inquiry") The plain meaning of "investigation" clearly requires some degree of careful inquiry. *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1302 (11th. Cir. 2016) ("ordinary meaning of 'verification' is: (1) 'evidence that establishes or confirms the accuracy or truth of something'; (2) 'the process of research, examination, etc., required to prove or establish authenticity or validity"; quoting Random House Unabridged Dictionary (2d ed. 1993))

(3)     PCMS's inability to verify the majority of the accounts it was reporting to Experian should have been a major red flag that the PCMS accounts it was reporting for Plaintiff were potentially inaccurate.[14] However, instead of doing further any independent investigation, Experian just kept reporting the remaining 13 PCMS accounts (despite Plaintiff's continued disputes to the remaining PCMS accounts) and absolutely no employees at Experian ever viewed Plaintiff's credit disputes, as Experian's entire process was automated. [Dkt. 23-8, 12:6-15].

(4)     In addition, Experian admits that it never even contacted PCMS to see if had any documents supporting the alleged debts. [Dkt. 23-8, 32:6- 18]. Such an investigation would not have been unduly burdensome or costly for Experian to do, as it only would have required making a telephone call.[15]

(5)     Experian admits it would only do further investigation of the consumer's claim that they were not responsible for the account if the consumer provided them with some sort of documentation that would prove the account being reported on the credit file was not theirs. [Dkt. 23-8, 55:14-22].[16]

(6)     Instead, Experian just ignored the content of Plaintiff's numerous disputes and dispute letters in 2019 and 2021 (claiming she was not responsible for the accounts) and just relied upon the furnisher (PCMS) verifying the demographic information for the accounts. [Dkt. 23-8, 55:14-22, 60:21-61:1].

(7)     Even on the one occasion an agent/employee of Experian did process Plaintiff's dispute letter in January/February 2021, that individual only attached the Plaintiff's dispute letter to the ACDV sent to PCMS and the rest of the process was automated. [Dkt. 23-8, 12:16-13:4, 26:12-20, 59:17-21]. Thus, the one occasion an employee of Experian was minimally involved in the reinvestigation process, Experian did not even follow its own procedures because it only reinvestigated 2 of the 13 remaining PCMS accounts on her credit file even though Experian admits that her letter disputed all 13 PCMS accounts still being reported by Experian on her credit reports and file. [Dkt. 23-8, 12:16-15:25, 70:16-71:13].

---

[14] A credit reporting agency's procedure can be deemed unreasonable if the agency has a reason to believe that the information supplied to it by a data furnisher is unreliable. *Losch*, 995 F.3d at 945.

[15] The Eleventh Circuit has adopted the principles that when a credit reporting agency has been notified of potentially inaccurate information in a consumer's credit report, it is in "a very different position than one who has no such notice" because once a claimed inaccuracy "is pinpointed, a consumer reporting agency conducting further investigation incurs only the cost of reinvestigating that one piece of disputed information." *Losch*, 995 F.3d at 945 (quoting *Henson v. CSC Credit Servs.*, 29 F.3d 280, 286-87 (7th Cir. 1994); *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997))

[16] Such a procedure is "objectively unreasonable" as it is impossible for an individual in the circumstances such as Plaintiff (who has never received any bills or other documents regarding the alleged accounts) to provide a credit reporting agency with document "proof" that they are not responsible for the accounts at issue.

Accordingly, here, Experian was required to do more than simply confirm that the Plaintiff's demographic information for the accounts in its records matched PCMS's demographic information. Courts have consistently held that the credit reporting agencies like Experian must do more than simply confirm the demographic information when they have been provided with reason to believe that furnishers information might be inaccurate. *Carlisle v. Nat'l Commer. Servs.*, 2015 U.S. Dist. LEXIS 87600 (N.D. Ga. July 7, 2015)("In certain situations, a CRA should go beyond merely verifying the accuracy of its initial source of information.") In such circumstances, the credit reporting agency must contact third parties for information and must consider all relevant information at its disposal. *See Crane v. Trans Union, LLC*, 282 F. Supp. 2d 311, 321 (E.D. Pa. 2003)(denying CRAs motion for summary judgment and stating that section 1681i(a) requires "something more than merely parroting information" that creditors provided and finding that a reasonable jury could also find that credit reporting agency's failure independently to analyze plaintiff's dispute constituted a knowing or reckless violation of the FCRA).

Plaintiff put Experian directly on notice of her dispute, as she provided Experian with several letters explaining her dispute of the PCMS accounts and that she never received services from and/or bills from the alleged creditor (Incare). **After her initial dispute, Experian even removed 15 accounts, and therefore, should have been aware that the information being reported by PCMS was unreliable as over half the accounts which were allegedly Plaintiffs could not be verified by PCMS**. But Experian inexplicably continued to ignore the content of Plaintiff's dispute letters regarding the remaining 13 accounts and never sought information from PCMS which could have verified if its reporting regarding the accounts was correct or incorrect. Thus, Experian relied solely on a *pro forma* review when it could have easily, by making a phone call, requested the underlying documents regarding the debt from PCMS, a third-party debt

collector and/or from the original billing source (Incare). Instead, Experian chose to not even perform this first small step of any reasonable investigation and chose to continue reporting unverifiable accounts in the face of multiple disputes from Plaintiff. Experian should have deleted and/or corrected Plaintiff's information that it never verified (15 U.S.C. § 1681i(a)(5)), as outlined above, but Experian refused to conduct a reasonable investigation and instead conducted a *pro forma* automated review, which was woefully unreasonable given the facts of this case. Therefore, Experian's summary judgment should be denied on this point alone that is clearly a question for the jury in this case.[17]

F.   Experian Did Act Willfully in Failing to Properly Reinvestigate Plaintiff's Disputes, But Concedes its Actions were at Least Negligent

A plaintiff may recover damages for both negligent and willful violations of §1681e and § 1681i. See 15 U.S.C. § 1681o (negligent violations); § 1681n (willful violations).[18] *Losch v. Nationstar Mortg. LLC,* 995 F.3d 937, 944 (11th Cir. 2021). Here, as shown below, Experian's conduct meets both the negligent and willful standards under the FCRA.

---

[17] Application of the *Henson* balancing test is a question for the jury. In *Ferrarelli v. Federated Fin. Corp. of Am.*, 2009 U.S. Dist. LEXIS 72861 (S.D. Ohio Jan. 16, 2009), the court noted the approach taken by the court in *Murphy v. Midland Credit Management, Inc.*, 456 F. Supp. 2d 1082 (E.D.Mo. 2006). The *Murphy* court explained that one of the factors to be considered in determining whether a credit reporting agency has conducted a reasonable investigation includes "the cost of verifying the accuracy of the source versus the possible harm of reporting inaccurate information." *Id.* at 1090, *citing Bruce v. First U.S.A. Bank, N.A.*, 103 F.Supp.2d 1135, 1143 (E.D.Mo. 2000). The court in *Murphy* explained and the *Ferrarelli* court agreed: "The determination of the 'reasonableness' of the defendant's procedures… is treated as a factual question even when the underlying facts are undisputed. It therefore cannot be resolved on summary judgment unless the reasonable or unreasonableness of the procedures is beyond question…" *Id.*, *citing Crabill v. Trans Union, LLC*, 259 F.3d 662, 664 (7th Cir. 2001).

[18] Recovery for a negligent violation of the FCRA is limited to the amount of actual damages and attorneys' fees and costs. 15 U.S.C. § 1681o. If the breach is willful, however, the plaintiff is entitled to recover either actual damages or statutory damages (from $ 100-$ 1,000), whichever is greater, in addition to attorneys fees and costs. The Court may also impose punitive damages to punish a willful violation of the FCRA. 15 U.S.C. § 1681n.

1.   <u>Plaintiff has Presented Sufficient Evidence to Establish Willfulness of Experian Violations of the FCRA</u>

Initially, Experian's Motion does not dispute that it actions could be considered negligent under the FCRA[19] (instead claiming that Plaintiff cannot establish necessary evidence to support a claim for damages for negligence) but does dispute that its actions were willful. To establish a willful violation, Plaintiff must show that Experian "either knowingly or recklessly violated" the FCRA. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007). A company violates the FCRA where its action, based on a reading of the statute's terms, is more than "merely careless" and, instead, it engages in conduct which amounts to an "objectively unreasonable" view of the company's duties under the statute. *Id.* [20]

Here, as shown above, the record shows that Experian's conduct was "objectively unreasonable" in regard to its duties under the statute as follows:

(1)   In October 2017, Plaintiff initially disputed 28 PCMS accounts with Experian claiming that these accounts were not hers. [Dkt. 23-9, Bates Nos. EXP-FOWLER-002081-002107].

(2)   PCMS was only able to verify 13 of the 28 disputed accounts which resulted in Experian deleting over half (15 of the 28) of PCMS accounts being reported on Plaintiff's credit reports and file. [Dkt. 23-10, Bates Nos. EXP-FOWLER-001843-001845].

(3)   Instead of doing further any independent investigation, Experian then "investigated" Plaintiff's May 2019 and January 2021 disputes by just verifying that the demographic information for Plaintiff already in its database matched the demographic information for Plaintiff already in PCMS's database and Experian's entire process was automated. [Dkt. 23-8, 12:6-15].

---

[19] It is clear that Experian's conduct was, at the very least, negligent. *See Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1336 (11th Cir. 2015)(finding that a credit reporting agency which took no steps to verify the information other than contacting the furnisher with an ACDV regarding the disputed was negligent).

[20] In FCRA cases, punitive damages may be awarded for noncompliance with its provisions even when a defendant does not exhibit malice or evil motive in violating the Act. *See Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 418 (4th Cir. 2001); *Cousin v. Trans Union Corp.*, 246 F.3d 359, 372 (5th Cir. 2001) ("Malice or evil motive need not be established for a punitive damages award [in FCRA cases], but the violation must have been willful.").

(4)     Experian admits that it never even contacted PCMS to see if had any documents supporting the alleged debts even though such an investigation would not have been unduly burdensome or costly for Experian to do, as it only would have required making a telephone call and/or sending an email to PCMS for documents verifying that the debt was Plaintiff's. [Dkt. 23-8, 32:6- 18].

(5)     Experian would only do further investigation of the consumer's claim that they were not responsible for the account if the consumer provided them with some sort of documentation that would prove the account being reported on the credit file was not theirs. [Dkt. 23-8, 55:14-22]. Since Plaintiff was unable to provide such evidence, Experian just ignored the content of Plaintiff's dispute letters in 2019 and 2021 (claiming she was not responsible for the accounts) and just relied upon the information provided by the furnisher (PCMS). [Dkt. 23-8, 55:14-22, 60:21-61:1].

(6)     On the one occasion an agent/employee of Experian did process Plaintiff's dispute letter that individual only attached the Plaintiff's dispute letter to the ACDV sent to PCMS, the rest of the process was automated, and Experian only reinvestigate some of the accounts Plaintiff disputed (2 of 13). [Dkt. 23-8, 12:16-13:4, 26:12-20, 59:17-21, 70:16-71:13].

A CRAs act of just simply relying upon the reports of the credit furnisher without further investigative action has been found to be sufficient evidence of a willful violation of the FCRA. *See Crane v. Trans Union, LLC*, 282 F. Supp. 2d 311, 321 (E.D. Pa. 2003)(denying CRAs motion for summary judgment and stating that section 1681i(a) requires "something more than merely parroting information" that creditors provided and finding that a reasonable jury could also find that credit reporting agency's failure independently to analyze plaintiff's dispute constituted a knowing or reckless violation of the FCRA). As such, Experian's inactions in investigating Plaintiff's disputes and failure to follow its procedures are "objectively unreasonable" when considering its duties under the statute and Plaintiff has provided enough evidence of willfulness to survive summary judgment. *See, Crane, supra*; *Lawrence v. Trans Union L.L.C.*, 296 F. Supp. 2d 582, 590 (E.D. Pa. 2003)(finding plaintiff had provided evidence of willful acts taken by CRA agency to survive summary judgment).

2.      <u>Plaintiff Has Established Actual Damages</u>[21]

Defendant also claims that it is entitled to summary judgment because Plaintiff cannot establish negligence damages due its violations of §1681e and § 1681i. "Actual damages" for an FCRA violation include both economic damages as well as noneconomic damages such as emotional distress. *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1124-25 (11th Cir. 2006). Here, Plaintiff has presented significant evidence of her actual damages suffered within the statute of limitations due to Experian's violations of §1681e and § 1681i, including:

(1)      Plaintiff was denied new credit opportunities due the erroneous credit reporting by Defendant, including being denied credit card with JC Penny in 2019. [Dkt. 23-16, Response to Interrogatory #20 – Request #2; Dkt. 23-4, 93:17-94:4]. She also applied for a credit card and was only approved for a secured credit card which required a deposit. [Dkt. 23-4, 96:17-97:6]. The lenders she applied for credit with advised her that she was being denied credit due to "open collections" and "low credit score." [Dkt. 23-4, 98:9:-13]. Plaintiff testified that as soon as the 13 PCMS accounts were finally removed from her credit file and reports by Experian in 2021, she began to be offered credit opportunities again. [Dkt. 23-4, 98:17-99:8].

(2)      In 2020, Plaintiff was initially denied insurance with Progressive Insurance but was later able to be insured by Progressive, but at a substantially increased rate from her previous rate. [Dkt. 23-16, Response to Interrogatory #20 – Request #4]. Progressive advised her that the increased insurance rate was due to "open collections" in her credit reporting [Dkt. 23-4, 92:8-20]. Plaintiff was also denied insurance by State Farm Insurance and Infinity Insurance. [Dkt. 23-16, Response to Interrogatory #20 – Request #3].[22]

---

[21] "Actual damages are not a statutory prerequisite to punitive damages" under the FCRA. *Rambarran v. Bank of Am., N.A.*, 609 F. Supp. 2d 1253, 1270 (S.D. Fla. 2009).

[22] While Defendant claims that Plaintiff cannot establish that any credit or insurance denials and/or raised rates Plaintiff has identified were related to its erroneous reporting regarding the PCMS accounts, it is undisputed that (1) Plaintiff was told when she was denied credit and insurance that it was due to "open collections," [Dkt. 23-4, 92:8-20, 98:9:-13] (2) Experian was reporting all of the PCMS as open accounts in "collection" from November 2017 through when accounts were removed in 2021 [Dkt. 23-12, EXP-FOWLER 001402-001407; Dkt. 23-13, EXP-FOWLER 001592-001597], and (3) and none of the other credit reporting agencies other than Experian were reporting the PCMS accounts in 2019 and/or 2021. [Dkt. 23-4, 85:17-87:14].

Defendant's motion sets forth hypothetical reasons (Plaintiff's driving record, other credit denials, etc.) why these events could have occurred but has provided no actual evidence in support of its Motion showing that Plaintiff was denied by these creditors and/or for auto insurance for some other reason. *Eller v.*

(3)     Plaintiff has suffered humiliation/embarrassment, emotional distress and worry about being rejected when applying for credit due to the inaccurate credit reporting by Defendant and has a fear of being denied due to the incorrect reporting. Plaintiff also suffered emotional and mental anguish, frustration, humiliation, embarrassment from the inaccurate reporting. [Dkt. 23-16, Response to Interrogatory #18; Dkt. 23-4, 100:5-19; 106:20-24]. The issues with the credit reporting regarding the PCMS accounts has also cause her embarrassment in front of her family and friends, including her son, because she seemed unable to care for herself. [Dkt. 23-4, 103:8-20].

This has manifested itself in sleeplessness, heart palpitations, feelings of being sick/ill, crying, feelings of intense anger and sadness, depression, irritability, fear and hopelessness, concern for her ability to provide for herself, among other emotions. [Dkt. 23-16, Response to Interrogatory #18].

Starting in 2020, Plaintiff has been receiving weekly therapy/PTSD counseling from therapist Catherine Doe. [Dkt. 23-4, 109:14-110:13]. She did not see a therapist before the PCMS reports were reported on her account. [Dkt. 23-4, 111:16-20]. Plaintiff testified that she has been going to PTSD therapy solely because of the credit reporting issue [Dkt. 23-4, 101:25-102:11].[23]

Furthermore, Defendant claims that Plaintiff's evidence of her emotional distress damages is insufficient is simply not accurate., In *Losch*, the Eleventh Circuit determined that a plaintiff's own statements in an affidavit regarding their emotional distress were sufficient to support a claim for emotional damages at the summary judgment stage. 995 F.3d at 944. In *Losch*, Experian

---

*Experian Info. Solutions, Inc.*, Civil Action No. 09-cv-00040-WJM-KMT, 2011 U.S. Dist. LEXIS 85776, at *9 (D. Colo. Aug. 4, 2011)(denying summary judgment to Trans Union in mixed file claim because "[t]here is no evidence on the record showing that Bank of America denied Plaintiff's credit for a reason other than the NCO Financial account [which belonged to a third party] in Plaintiff's Trans Union credit file"). The FCRA does not require the defendant's conduct to be the *sole* cause of losses, but merely an "actual" cause. *Philbin v. Trans Union Corp.*, 101 F.3d 957, 969 (3d Cir. 1996)("[c]ourts have recognized that where a decision-making process implicates a wide range of considerations, all of which factor into the ultimate decision, it is inappropriate to saddle a plaintiff with the burden of proving that one of those factors was the cause of the decision."). Accordingly, Plaintiff has provided sufficient evidence that Defendant's actions were an "actual" reason for her damages related to credit and insurance denials and increased rates. *See Martinez v. Vericrest Fin.*, 2015 WL 347679 (E.D. Wis. Jan. 26, 2015) (denying summary judgment to defendant where interest rates increased after loan denial caused by credit reporting error).

[23] Even if the Court was to find Plaintiff's evidence of credit and insurance denials and higher rates to be unavailing, an FCRA claim can survive summary judgment so long as there is sufficient proof of emotional injury. *Crane v. Trans Union, LLC*, 282 F. Supp. 2d 311, 319 (E.D. Pa. 2003).

argued, as it does in this case, that "self-serving" testimony, standing alone, cannot prove emotional damages sufficiently to survive summary judgment. *Id*. The Eleventh Circuit found that Experian's argument was contrary to the decision in *United States v. Stein,* 881 F.3d 853, 858-59 (11th Cir. 2018), and ruled that the plaintiff's non-conclusory statements concerning stress, anxiety, and lack of sleep must be taken as true on summary judgment and that the affidavit testimony[24] was sufficient "to raise a jury question about damages on the merits." *Id*; *See also Benjamin v. Experian Info. Sols*., No. 1:20-CV-2466-RWS, 2021 U.S. Dist. LEXIS 178193, at *17-18 (N.D. Ga. Sep. 20, 2021). Similar to *Losch*, here, Plaintiff has provided much more than conclusory allegations of emotional distress, as she has explained the type of emotions and distress she has felt, the ways her emotional distress has manifested itself, and what she has done to deal with this emotional distress. Thus, Plaintiff has established sufficient evidence of her damages for Experian's violations of the FCRA.

G.      Plaintiff Has Presented Sufficient Evidence to Establish a *prima facie* claim under 15 U.S.C.S. §1681e and 15 U.S.C.S. §1681i

As shown above, Plaintiff has presented sufficient evidence to support *prima facie* claims against Experian under §1681e and 1681i. It is undisputed that Plaintiff's Experian credit file and credit reports to third parties reported that Plaintiff was responsible for 13 PCMS accounts which were open and in "collection" from 2019 thru 2021. [Dkt. 23-12, EXP-FOWLER-0011410; Dkt. 23-13, EXP-FOWLER-001599]. Plaintiff has established facts showing that the information Experian was reporting regarding the PCMS accounts was inaccurate. [*See* Section, III.D above]. Plaintiff has also established that she disputed the accuracy of information in her credit report with Experian, that Experian failed to conduct a reasonable investigation of the identified disputes in

---

[24]Here, Plaintiff is not relying upon a "self-serving" affidavit but relies upon her detailed responses to interrogatories and her live testimony at her deposition.

response and that Experian's actions were willful (and Experian concedes its actions were at least negligent). [*See* Sections III.E-F above]. Finally, Plaintiff has also established facts showing that she was damaged as a result of the erroneous information regarding the PCMS accounts contained in Experian's credit file for Plaintiff and reported on its credit reports to others regarding Plaintiff. [*See* Section III.F(2) above]. Accordingly, Defendant's Motion should be denied.

WHEREFORE, Plaintiff Angelia Fowler hereby respectfully requests that the Court enter an order denying Defendant Experian Information Solutions' Motion for Summary Judgment on Counts I, II and III of Plaintiff's Complaint and any other relief the Court deems just and appropriate under the circumstances.

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2021 a true and correct copy of the foregoing was served via email to: Tom K. Schulte, Esq. (tschulte@jonesday.com; (obencomo@jonesday.com), JONES DAY, 600 Brickell Avenue Suite 3300 Miami, Florida 33131, Attorney for defendant Experian.

/s/ *Dennis A. Creed, III*
Dennis A. Creed, III, Esq.
Florida Bar No. 0043618
Email: dcreed@creedlawgroup.com
Bradley R. Hall, Esq.
Florida Bar No.: 26172
Email: bhall@creedlawgroup.com
Creed Law Group, PLLC d/b/a
Creed & Hall
13043 West Linebaugh Avenue
Tampa, FL 33626
Telephone: (813) 444-4332