UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANGELA FOWLER,

      Plaintiffs,

v.                              Case No. 8:21-CV-01038-WFJ-AAS

EXPERIAN INFORMATION SOLUTIONS, INC.
and PREFERRED COLLECTION AND
MANAGEMENT SERVICES, INC,

      Defendants.

_____/

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS FOR HER RESPONSE IN
OPPOSITION TO DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S
MOTION FOR SUMMARY JUDGMENT**

In accordance with this Court's June 29, 2021 Case Management and Scheduling Order,

Plaintiff Angelia Fowler ("Plaintiff" or "Fowler") hereby submit her response to the Statement of

Disputed Facts in opposition to Defendant Experian Information Solutions, Inc.'s ("Defendant")

Statement of Undisputed Facts in Support of its Motions for Summary Judgment [Dkt. 23] as

follows:

1.      **Admitted**.

2.      **Admitted**.

3.      **Admitted**.

4.      **Admitted**.

5.      **Denied**. Plaintiff denies that she ever received any services at St. Mary's Medical

Center ("St. Mary's") from "rounding physicians" employed by or whose services were billed by

Incare Medical Services, Inc. ("Incare")[1] [Dkt. 23-4, 27:13-15]. Plaintiff never received any bills from Incare at any point and had never even heard of Incare until the name appeared on her credit report years later. [Dkt. 23-4, 30:14-22, 31:21-32:8]. Plaintiff's doctor at St. Mary's was Dr. Williker. [Dkt. 23-4, 31:10-12]. The only evidence cited by Defendant to support this claim is the conclusory assumptions of several corporate representatives who have no personal knowledge of whether Plaintiff actually received services from Incare. Specifically, Defendant relies upon the testimony of Matthew Kiefer, the corporate representative for Defendant Preferred Collection Management Systems, Inc. ("PCMS"), who admitted that (1) PCMS has never spoken to Incare to determine if the services Incare charged to Plaintiff were actually provided to Plaintiff, and (2) that PCMS has no documentation which Plaintiff signed for any of the services/debts that PCMS was attempting to collect on behalf on Incare. [Dkt. 23-5, 9:16-10:17, 20:21-21:6]. Defendant also relies upon the affidavit of Raj Shah[2], the former Chief Financial Officer of Incare, who claims that Plaintiff received services from Incare based upon his review two alleged records of Incare which do not reference Plaintiff's name, date of birth, social security or any other identifying information (despite stating in his affidavit that Incare has documents such "signed consents" and "bills") that would support that these documents are records related to Plaintiff. [Dkt. 23-7, ¶¶5-6, Ex. A-B][3]. Dr. Williker, Plaintiff's doctor at St. Mary's, is not among the physicians listed and Defendant has provided no evidence that any of these physicians actually saw and/or provided services to Plaintiff during her stay at St. Mary's and/or that any of these physicians was

---

[1] Incare was a third-party billing provider for "rounding physicians". [Dkt. 23-5, 19:2-13]. Incare then transferred the debt allegedly owed by Plaintiff to PCMS on December 12, 2016. [Dkt. 23-5, 12:4-6]. PCMS is a debt collection company. [Dkt. 23-5, 5:19-24].

[2] Additionally, as discussed in greater detail in Plaintiff's Response in Opposition, Defendant's failed to identify this witness during discovery, and thus, any testimony from this witness and the documents attached to his affidavit should not be relied upon by the Court.

[3] Defendant also relies upon PCMS' response to interrogatories [Dkt. 23-6, #8], which contains the same list of alleged physicians as is contained on Dkt. 23-7, Ex.-B.

performing rounding services for Dr. Williker. [*See*, Dkt. 23-5, 9:16-10:17, 20:21-21:6; Dkt. 23-7, ¶¶5-6, Ex. A-B].

6.    **Denied**. As discussed in greater detail in response to Paragraph 5 above, Plaintiff denies that she ever received any services at St. Mary's from "rounding physicians" employed by or whose services were billed by Incare. [Dkt. 23-4, 27:13-15, 30:14-22, 31:21-32:8]. Defendant relies solely on conclusory claims made by witnesses without personal knowledge of whether Plaintiff actually received services and has provided no evidence that any of these physicians actually saw and/or provided services to Plaintiff during her stay at St. Mary's and/or that any of these physicians was performing rounding services for Dr. Williker. [*See*, Dkt. 23-5, 9:16-10:17, 20:21-21:6; Dkt. 23-7, ¶¶5-6, Ex. A-B].

7.    **Denied**. As discussed in greater detail in response to Paragraph 5 above, Plaintiff denies that she ever received any services at St. Mary's from "rounding physicians" employed by or whose services were billed by Incare. [Dkt. 23-4, 27:13-15, 30:14-22, 31:21-32:8]. Defendant relies solely on conclusory claims made by witnesses without personal knowledge of whether Plaintiff actually received services and has provided no evidence that any of these physicians actually saw and/or provided services to Plaintiff during her stay at St. Mary's and/or that any of these physicians was performing rounding services for Dr. Williker. [*See*, Dkt. 23-5, 9:16-10:17, 20:21-21:6; Dkt. 23-7, ¶¶5-6, Ex. A-B].

8.    **Denied**. Plaintiff denies that she ever received (1) any services at St. Mary's from "rounding physicians" employed by or whose services were billed by Incare and (2) that she received any bills for services from Incare. [Dkt. 23-4, 27:13-15, 30:14-22, 31:21-32:8]. Defendant's allegation is based solely upon the testimony of corporate representatives for Defendant PCMS and for Incare, who have no personal knowledge of whether Plaintiff actually

received medical services from Incare, received any bills for services from Incare and/or paid those bills. [Dkt. 23-5, 9:16-10:17, 20:21-21:6, 24:17–25:13; Dkt. 23-7, ¶8; Dkt., 23-8, 32:6-11, 32:14-18, 61:19–22].

9.    **Admitted in part; denied in part**. Plaintiff admits that in December 2016 Incare transferred debts it (Incare) claimed was owed by Plaintiff on 28 accounts to PCMS; however, Plaintiff denies that she ever received any services and/or bills from Incare and denies that she was responsible for the debts on these 28 accounts. [Dkt. 23-4, 27:13-15, 30:14-22, 31:21-32:8].

10.    **Admitted in part; denied in part**. Plaintiff admits that in Incare provided information to PCMS that Plaintiff was the holder of the 28 accounts its was transferring for collection; however, Plaintiff denies that she ever received any services and/or bills from Incare and denies that she was responsible for the debts on these 28 accounts. [Dkt. 23-4, 27:13-15, 30:14-22, 31:21-32:8].

11.    **Admitted in part; denied in part**. Plaintiff admits that in May 2017 PCMS began reporting to Experian on Plaintiff's alleged debts to Incare (now being collected by PCMS); however, Plaintiff denies that she ever received any services and/or bills from Incare and denies that she was responsible for the debts on these 28 accounts transferred from Incare to PCMS. [Dkt. 23-4, 27:13-15, 30:14-22, 31:21-32:8].

12.    **Admitted**.

13.    **Admitted in part; denied in part**. The address provided for Plaintiff by PCMS did not match the address on file with Experian for Plaintiff. [Dkt. 23-8, 22:2-19].

14.    **Admitted with clarification**. Experian initially displayed 28 PCMS accounts allegedly belonging to Plaintiff on Plaintiff's credit file. [Dkt. 23-4, 64:14-65:4; Dkt. 23-8, 66:16–19; Dkt. 23-11, Bates Nos. 002029-002047].

15.    **Admitted in part; denied in part**. The address provided for Plaintiff by PCMS did not match the address on file with Experian for Plaintiff. [Dkt. 23-8, 22:2-19].

16.    **Admitted**.

17.    **Admitted**.

18.    **Admitted with clarification.** In October/November 2017, Plaintiff disputed 28 different PCMS accounts that were appearing on her Experian credit reports and file. [Dkt. 23-9, Bates Nos. EXP-FOWLER-002081-002107].

19.    **Admitted with clarification**. Plaintiff disputed the 28 PCMS accounts with Experian via its online dispute tool, by mail and by phone in October/November 2017. [Dkt. 23-4, 55:8-21].

20.    **Admitted with clarification**. When Experian receives an online dispute to a credit report, Experian's automated online dispute system automatically forwards the dispute to the furnisher for verification. [Dkt. 23-8, 11:11-15]. Experian's online dispute process is completely automated, and the dispute is not seen or handled by an agent or any employee of Experian before being sent to the furnisher and no independent investigation is done by Experian. [Dkt. 23-8, 12:6-15]. In October/November 2017, Plaintiff disputed 28 different PCMS accounts that were appearing on her Experian credit reports and file. [Dkt. 23-9, Bates Nos. EXP-FOWLER-002081-002107].

21.    **Denied**. After receiving PCMS's ACDV responses Experian advised Plaintiff that *some* of the PCMS accounts it was reporting on her credit file were "verified as accurate", but that other PCMS accounts were being deleted from her Experian credit file. [Dkt. 23-10, Bates Nos. EXP-FOWLER-001843-001845]. Specifically, Experian advised Plaintiff that based on the information provided by PCMS, it (Experian) was deleting 15 of the 28 PCMS accounts (accounts

ending in #3116, #3128, #3160, #3181, #3218, #3250, #3280, #3676, #3712, #3735, #3776, #3801, #3832, #3877, and #3925) being reported on Plaintiff's credit file. [Dkt. 23-10, Bates Nos. EXP-FOWLER-001843-001845]. Experian advised that PCMS had "verified as accurate" 13 PCMS accounts (accounts ending #3323, #3344, #3378, #3418, #3444, #3484, #3963, #3990, #4019, #4039, #4071, #4632, and #4650) being reported on Plaintiffs credit reports and file. [Dkt. 23-10, Bates Nos. EXP-FOWLER-001843-001845].

22.    **Admitted**.

23.    **Admitted with clarification**. As of May 2019, Experian was reporting that 13 of the PCMS accounts (accounts ending #3323, #3344, #3378, #3418, #3444, #3484, #3963, #3990, #4019, #4039, #4071, #4632, and #4650) were in "collection" and that the original creditor for these accounts was Incare. [Dkt. 23-12, Bates Nos. EXP-FOWLER-001401-001407].

24.    **Admitted with clarification**. On May 18, 2019, Plaintiff disputed with Experian, via its online tool and via letter, the reporting on the 13 PCMS reports on her credit reports and file. [Dkt. 23-4, 57:3-21; 68:15-17].

25.    **Admitted with clarification**. As of January 28, 2021, Experian was still reporting that 13 of the PCMS accounts (accounts ending #3323, #3344, #3378, #3418, #3444, #3484, #3963, #3990, #4019, #4039, #4071, #4632, and #4650) were in "collection" and that the original creditor for these accounts was Incare. [Dkt. 23-13, Bates Nos. EXP-FOWLER-001591-001157].

26.    **Admitted with clarification**. On January 28, 2021, Plaintiff again disputed with Experian, via its online tool and via letter, the reporting on the 13 PCMS accounts remaining on her credit file. [Dkt. 23-4, 62:24-63:23; 68:15-17]. However, in response, Experian only sought reinvestigation of 2 of the 13 remaining PCMS accounts on her credit file even though her letter disputed all 13 PCMS accounts still being reported by Experian on her credit file and reports. [Dkt.

23-8, 70:16-71:13]. Furthermore, Plaintiff also again disputed with Experian, via a mailed letter, the reporting on the 13 PCMS reports remaining on her credit file on April 12, 2021. [Dkt. 23-8, 43:2-4].

27.   **Denied**. In response to her initial dispute in October/November 2017, Experian advised Plaintiff that 13 of the 28 PCMS accounts it was reporting on her credit file and reports were "verified as accurate", but that other 15 PCMS accounts it was reporting were being deleted from her Experian credit file. [Dkt. 23-10, Bates Nos. EXP-FOWLER-001843-001845]. In addition, Experian did no "reinvestigation" of the Plaintiff's continued disputes to its reporting on the 13 remaining PCMS accounts; but instead, simply sent automated ACDV's to PCMS, without review by any agent/employee of Experian. [Dkt. 23-8, 11:11-15, 12:6-15]. When PCMS sent its responses, Experian processed the responses via an automated program that prepares the response to the customer and updates, deletes and/or verifies the information disputed. [Dkt. 23-8, 26:12-20]. No agent/employee of Experian ever reviewed the Plaintiff's 2017 or 2019 disputes, as their handling was completely automated. [Dkt. 23-8, 37:14-23, 59:10-16]. An agent/employee of Experian did process Plaintiff's letter dispute of the PCMS accounts in 2021; however, that individual only attached the Plaintiff's dispute letter to the ACDV sent to PCMS and the rest of the process was automated. [Dkt. 23-8, 12:16-13:4, 26:12-20, 59:17-21]. Experian only ever requested that PCMS verify the demographic information (name, date of birth, Social Security number, etc.) of the PCMS accounts it was reporting and never requested that PCMS provide any documentation supporting the debt was owed or that Plaintiff had actually been billed for the alleged services. [Dkt. 23-8, 32:6-18, 33:7-16]. If the furnisher, such as PCMS, validates the demographic information, Experian does no further investigation, even if the consumer's dispute is claiming the accounts being reported are not theirs. [Dkt. 23-8, 14:7-17, 15:11:25, 60:21-61:1].

Experian just relies on the reporting of the furnisher and would only do further investigation of the consumer's claim if the consumer provided them with some sort of documentation that would prove the account being reported on the credit file was not theirs. [Dkt. 23-8, 55:14-22]. Plaintiff requested that Incare and PCMS provide her with copies of her of documents supporting their contention that the debts were hers, but neither company ever responded and/or provided her with any such documents. [Dkt. 23-4, 32:13-33:2, 33:15-22, 131:25-132:24]. Plaintiff also never received any bills or other documents from Incare or PCMS regarding these alleged debts., and thus, had no documents to provide Experian regarding any of the PCMS accounts being reported. [Dkt. 23-4, 30:14-22, 32:9-12; 75:9-17].

28.    **Admitted**.

29.    **Admitted**.

30.    **Admitted**.

31.    **Denied**. Plaintiff testified that based upon her personal knowledge, at the time of her deposition, she was unaware of what actions had been taken by Experian, if any, to reinvestigate her disputes, and thus, Plaintiff indicated that she did not have any personal knowledge of willful acts taken by Experian, but that she believed Experian was at the very least negligent in failing to remove all the PCMS accounts from her credit file. [Dkt. 23-4, 124:9-125:4].

### CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2021 a true and correct copy of the foregoing was served via email to: Tom K. Schulte, Esq. (tschulte@jonesday.com; (obencomo@jonesday.com), JONES DAY, 600 Brickell Avenue Suite 3300 Miami, Florida 33131, Attorney for defendant Experian.

9 | P a g e

/s/ *Dennis A. Creed, III*
Dennis A. Creed, III, Esq.
Florida Bar No. 0043618
Email: dcreed@creedlawgroup.com
Bradley R. Hall, Esq.
Florida Bar No.: 26172
Email: bhall@creedlawgroup.com
Creed Law Group, PLLC d/b/a
Creed & Hall
13043 West Linebaugh Avenue
Tampa, FL 33626
Telephone: (813) 444-4332
Fax: (813) 441-6121

and

/s/ *Christopher W. Boss*
BOSS LAW
Christopher W. Boss, Esq.
Fla. Bar No.: 13183
9887 Fourth Street North, Suite 202
St. Petersburg, Florida 33702
Phone: (727) 471-0039
Email: cpservice@protectyourfuture.com
Attorneys for Plaintiff