**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ANGELIA FOWLER,

       Plaintiff,

vs.                                           Civil Action No. 8:21-cv-01038-WFJ-AAS

EXPERIAN INFORMATION
SOLUTIONS, INC., and
PREFERRED COLLECTION AND
MANAGEMENT SERVICES, INC.,

       Defendants.                            /

DEFENDANT PREFERRED COLLECTION AND MANAGEMENT
SERVICES, INC., REPLY TO PLAINTIFF'S OPPOSITION TO ITS MOTION FOR
SUMMARY PURSUANT TO RULE 56(a) FEDERAL RULES OF CIVIL PROCEDURE

COMES NOW the Defendant, PREFERRED COLLECTION AND MANAGEMENT

SERVICES, INC., ("PCMS") by and through its undersigned counsel and pursuant to Middle

District of Florida Local Rule 3.01(d) and files this its reply to the response of Plaintiff,

ANGELIA FOWLER, ("Fowler") (Doc. 25) and states as follows:

**I.**      **THE RESPONSE FAILS TO ESTABLISH A GENUINE ISSUE OF MATERIAL FACT IN DISPUTE.**

Fowler's opposition, while admitting many facts makes procedural objections to many

other facts, but fails to establish that there is a material issue of fact in dispute.  For example,

Fowler claims that some facts asserted in PCMS's motion for summary judgment, (Doc. 21) did

not provide a pinpoint citation and argues that these facts should not be considered.  *See*

*Plaintiff's Response In Opposition to Defendant Preferred Collection and Management Services*

*Inc.'s Motion for Summary Judgment* (Doc. 25, pg 3-4) ("Response").  PCMS is not going to get

into a dispute as to how many facts fit on the head of a pinpoint citation, however it will show that there is no material fact in dispute.

A.    **STATUTE OF LIMITATIONS APPLIES TO MANY OF THE FACTS WHICH FOWLER MAINTAINS SHOULD NOT BE CONSIDERED BECAUSE OF A LACK OF PINPOINT CITATION TO THE RECORD.**

Fowler claims that she did include the comment "I HAVE NEVER RECEIVED SERVICES FROM THIS COMPANY AND I HAVE NO KNOWLEDGE OF THIS ACCOUNT NEVER AGREED TO PAY" in "each of her 28 online disputes with Experian. *See Response*, (Doc. 25, pg. 4, ¶ d). Fowler cites to *Experian's Motion for Summary Judgment, Exhibit G* (Doc. 23-9, pp. 2-29) to support this contention.[1]   However a review of the record reflects that the ACDV disputes containing the referenced language only occurred in the 2017, disputes. *See Id.* (Doc. 23-9, pp. 2-14). The dispute date is noted on the upper right hand of each page, and the dispute reason is in a comment box to the left. Fowler tacitly agrees that any dispute made in 2017, in particular the ones including the comment "I HAVE NEVER RECEIVED SERVICES FROM THIS COMPANY AND I HAVE NO KNOWLEDGE OF THIS ACCOUNT NEVER AGREED TO PAY" are barred by the two year statute of limitations. *See Response* (Doc. 25, pg. 11, lines 1-2.) As a result there is no material issue of fact in dispute as to that comment on the ACDVs.

Fowler makes no argument about the failure to investigate the comments made in the May 2019 disputes. In those disputes she claims a HIPAA violation. *See Id.* (Doc. 23-9, pp. 15-27). PCMS addressed the issue of HIPAA comments in its motion for summary judgment and has established that as a matter of law, it is not a violation of HIPAA to credit report the accounts in

---

[1]   Fowler refers to the Bates Nos. EXP-FOWLER-002081-002107.

dispute.  *See* (Doc. 21, pg 6, lines 14-17, and fn. 14). Basically, it is not a HIPAA violation to credit report, so there was no need for PCMS to respond or further investigate this additional comment. Nor has Fowler claimed that PCMS was required to investigate a HIPAA violation.

Other facts which Fowler claims should not be considered because of a lack of a pinpoint citation are also barred by the two year statute of limitations.  *See* (Doc. 25, pg. 4, ¶¶ e, f, and g). Each of these paragraphs deals with events which occurred or failed to occur in regard to the 2017 disputes, and therefore are not material facts for purposes of this action since the statute of limitations passed before this action was commenced.  *See Milgram v. Chase Bank USA*, No. 19-60929-CIV, 2020 U.S. Dist. LEXIS 12411, at *13 (S.D. Fla. Jan. 25, 2020).

**B.    FACTS ADMITTED ALTHOUGH FOWLER CLAIMS NO PINPOINT CITATION**

While Fowler maintains that in paragraphs h, i, and j, a list of facts lacking a pinpoint citation to the record, she has admitted, or admitted a material portion of the facts. *See* (Doc. 25, pg. 5, ¶¶ h, i, and j).  Paragraph h refers to page 7, lines 1 through 8 of PCMS's Motion for Summary Judgment and Fowler refers to her responses in  "Paragraphs #15 and #16 of her Statement of Disputed Facts."[2] (Doc. 25, pg. 5, ¶h).  Paragraphs #15 and #16 of Fowler's "Statement of Disputed Facts" are both unqualified admissions.  *See* (Doc.#26, pg. 6). Paragraphs i and j are disputed only as to the fact that Fowler claims to have disputed all thirteen accounts with Experian in January 2021, but PCMS only received two disputes.  *See* (Doc.#26, pg. 5).  Fowler admits that only two accounts were forwarded by Experian to PCMS in February 2021.  *See* (Doc. 26, pg. 3, ¶7.c). Thus PCMS's liability under the Fair Credit Reporting Act 15

---

[2] Ironically, there is no pinpoint citation to the record to support Fowler's claim that PCMS's claim is not supported by a pinpoint citation.

U.S.C. §1681s-2(b)(FCRA) is only triggered when it receives proper notice from a consumer reporting agency. *See §1681s-2(b)(1).* As a result, whether two accounts or thirteen accounts were disputed by Fowler in February 2021 may be material as to Experian, however disputes material to PCMS were the two that it received from Experian.

### C.   REMAINING ALLEGATIONS DID HAVE PINPOINT CITATIONS TO THE RECORD.

The additional facts which Fowler claims lacked pinpoint citations did have sufficient citation to the record. Those are paragraphs 10.a-c of the Response. *See* (Doc. 25, page 4). Paragraph 10.a refers to page 4, lines 7-22 of PCMS's motion for summary judgment, *see id*, which motion contains numerous references to the record. *See* (Doc. 21, pg 4, line 7-22). The same is true for paragraph 10.b. See (Doc. 21, pg 5, lines 1-4) including footnotes 8, 9, and 10. Each of those footnotes was a pinpoint citation to the record. As a result, all of these facts should be considered.

## II.   CLAIM THAT FOWLER DID NOT RECEIVE OR AGREE TO THE SERVICES FROM INCARE.

Fowler's claim against PCMS rests upon whether or not the information provided by PCMS to Experian was inaccurate. There is no fact to support this claim. Fowler may claim that she did not receive the services, or that she did not agree to them, but it does not make the information that PCMS reported inaccurate. It is not disputed that Incare referred the accounts to PCMS. *See* (Doc. 26, pg, ¶2). Fowler was not sure of the relationship between Incare and the services being billed. It is not disputed that Incare provided billing services for rounding physicians. *See id.* ¶ 3. There is simply no evidence that the accounts reported were inaccurate or that a different investigation would have disclosed to PCMS that what was assigned to it by Incare and credit reported was inaccurate. The Incare representative affidavit supports that the

services were rendered by rounding physicians at St. Mary's hospital during the time Fowler was hospitalized there.[3]  Thus, what is material is that had PCMS conducted a different investigation, it would not have discovered inaccuracies. *See Erickson v. First Advantage Background Services, Corp.*, 981 F.3d 1246, 1254 (11th Cir. 2020). Fowler's lack of memory of receiving services by the rounding physicians[4] is not sufficient to create a genuine issue of material fact. *See Larsen v. Citibank FSB*, 871 F.3d 1295, 1308 (11th Cir. 2017).   In addition, since Fowler would have the burden of proof at trial to establish that the accounts being reported by PCMS were inaccurate, it is sufficient for PCMS to point to a lack of evidence on this essential element of the Fowler's claim.  *See CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013).  Having done so, it was incumbent on Fowler to come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment.  *Id.*  Thus Fowler was required to come forward with specific facts showing that there is something more than some "metaphysical doubt" whether the account information was inaccurate. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  She has failed to do so and therefore PCMS is entitled to summary judgment.

---

[3]  Fowler asserts that PCMS's failure to disclose the Incare representative in its initial disclosures precludes consideration of the affidavit.  It is true that Incare was not initially disclosed since it was no longer a "going concern" according to PCMS's information.  It was not until December of 2021 after numerous attempts that Incare representative Raj Shah provided the affidavit.  PCMS will amend its disclosures to include Raj Shah and It will stipulate to allow Fowler to conduct his deposition even though the discovery cutoff has passed.  There were other irregularities with the conduct of discovery in this case such as the failure of Fowler to serve discovery responses to all parties in violation of *Fed.R.Civ.P. 5*(a)(1)( C).  *See* (Doc.  23-16, pg 2). PCMS was not provided Fowler's answers to Experian's interrogatories until after the discovery deadline expired and Experian attached them to its motion for summary judgment.

[4]  *See* (Doc. 21-3, pg 29, line 17, to pg 30, line 16).

**III.    PCMS DID NOT FAIL TO FOLLOW ITS PROCEDURE WHEN INVESTIGATING THE DISPUTES.**

Fowler claims that PCMS's investigation of the disputes were "objectively unreasonable" and lists five examples. *See* (Doc. 25, pg 14).[5] Of the five listed the first two relate to disputes in 2017 and are barred by the statute of limitations. *See Id.* The third and fourth examples are that the investigations were limited to verifying demographic information. PCMS has detailed this extensively its motion for summary judgment, *see* (Doc. 21, pg 19, line 3 to pg. 22, line 2), so it will not reargue the investigation herein. The final example is that PCMS did not follow its own procedures because PCMS did not send a letter directly to Fowler to verify the debt. Fowler confuses a verification of the debt procedure under the Fair Debt Collection Practices Act 15 U.S.C. 1692g(b) (FDCPA) which does require direct follow up with the consumer if the dispute is made timely, and a verification under the FCRA which does not require a direct follow up with the consumer.

**IV.    DAMAGES NOT CAUSALLY ESTABLISHED BY THE RECORD**

PCMS addressed Fowler's damage claims in its motion for summary judgment and will not restate them here. See (Doc. 21, pg 22, line 6 to pg 24, line 1). PCMS will point out that the three categories of actual damages allegedly suffered within the statute of limitations are supported by interrogatory answers. *See* (Doc. 25, pg 17-18). These answers to interrogatories were never served on PCMS before the discovery deadline in violation of the Federal Rules of Civil Procedure. *Fed.R.Civ.P.* 5(a)(1)(C). *See* (Doc. 23-16, pg 2). Further, while Fowler alleges that the damages were within two years of the filing off this suit, *see* (Doc. 25, pg. 17),

---

[5] The same five examples are enumerated on page 19 of the Response as well. See (Doc. 25, pg 19).

the discovery responses do not support it.  For example, there is no indication when in 2019 she was denied a J.C. Penney credit card.  If it had been before April 30, 2019, it would be outside the two year statute of limitation period.  As for secured credit card claim, *see* (Doc.  25, pg. 17), Fowler admitted that the account was opened in 2017.  *Statement of Undisputed Facts of Defendant Preferred Collection and Management Services Inc.*, ¶ 38 *Appendix B (Fowler Depo Trans.* Pg 95, lines 1-17); *see also* (Doc. 26 ¶38).

As for emotional distress, there has been no expert disclosed who will testify that the distress suffered by Fowler was due to the credit reporting by PCMS, or more specifically due to credit reporting within the statute of limitations.  For example, if the emotional distress did  occur in 2017 when she first disputed the accounts, then the damages due for that emotional distress would be barred by the two year statute of limitations, and without expert testimony, how do we determine that the emotional distress she claims was suffered in 2017 versus 2019, versus 2021.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 11, 2022, I electronically filed the foregoing document with the clerk of the court using CM/ECF, and that a Notice of Electronic Filing of the foregoing has been generated and is being served upon all counsel of record this date.

By:    /s/ Robert A. Vigh
       ROBERT A. VIGH
       FBN: 0991902
       Trial Counsel
       SOLOMON, VIGH & SPRINGER, P.A.
       P.O. BOX 3275
       TAMPA, FL 33601-3275
       (813) 229-0115
       rvigh@svslawfirm.com  (primary)
       Robvigh@gmail.com (secondary)