UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANGELIA FOWLER,

    Plaintiff,

v.                                              Case No: 8:21-cv-1038-WFJ-AAS

PREFERRED COLLECTION AND
MANAGEMENT SERVICES, INC.,

    Defendant.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

    This matter comes before the Court on Defendant Preferred Collection and Management Services, Inc.'s Motion for Summary Judgment, Dkt. 21. Plaintiff Angelia Fowler filed a response in opposition, Dkt. 25, to which Defendant replied, Dkt. 32. Upon careful consideration, the Court grants in part and denies in part Defendant's motion.

## BACKGROUND

    Plaintiff is a Florida resident bringing this action against Defendant, a Florida corporation that engages in third-party debt collection and furnishes information to credit reporting agencies. Dkt. 1 ¶¶ 4−6; Dkt. 21 at 3. In her Complaint, Plaintiff contends that she pulled her credit report from credit reporting

agency Experian Information Solutions, Inc. ("Experian")[1] in May 2019 and found that it inaccurately reflected that she was responsible for at least thirteen accounts associated with Defendant. Dkt. 1 ¶ 11. These accounts represented $476 in medical bills owed to Incare Medical Services, Inc. ("Incare"), which Plaintiff says is a provider she never visited. *Id.* ¶¶ 12, 16. However, Defendant notes that Incare is a medical billing service used by a group of rounding physicians at St. Mary's Hospital in West Palm Beach, where Plaintiff was treated in 2015. Dkt. 21 at 3−4, 18.

On May 8, 2019, Plaintiff disputed the Incare accounts with Experian, asserting that the credit reporting of the Incare accounts was a violation of HIPAA. Dkt. 21 at 2 n.3, 6; Dkt. 21-12 at 8. Experian sent notice of that dispute to Defendant, stating that Plaintiff claimed "inaccurate information" and asked Defendant to "confirm [Plaintiff's] complete ID and verify all Account Information." Dkt. 21 at 6; Dkt. 21-6 at 3. Experian also provided Defendant with Plaintiff's comment alleging a HIPAA violation. Dkt. 21 at 6. Defendant verified the disputed information for Experian on the same day the dispute was filed. Dkt. 21-6 at 3. Plaintiff asserts that she then sent letters to both Defendant and Experian on May 18, 2019, claiming that she was not responsible for the Incare accounts. Dkt. 1 ¶¶ 13, 15. Plaintiff states that, while Defendant did not respond to the May

---

[1] Experian was previously terminated as a party to this case. Dkt. 34.

18th letter, Experian informed her that the disputed information had been "updated." *Id.* ¶¶ 14, 16. However, Plaintiff's credit report continued to list the thirteen Incare accounts. *Id.* ¶ 16.

Over a year-and-a-half later in January 2021,[2] Plaintiff submitted another dispute to Experian regarding the Incare accounts. *Id.* ¶ 17. While Plaintiff contends that she disputed all thirteen Incare accounts, *see id.* ¶¶ 17–18, Defendant avers that Plaintiff only disputed two of the accounts at that time, Dkt. 21 at 7. In any event, Plaintiff asserts that she asked Experian for information verifying its claim that Plaintiff was responsible for the Incare accounts. Dkt. 1 ¶ 17. Experian responded in February 2021 that the disputed accounts had been "verified as accurate" and continued to list all thirteen Incare accounts on Plaintiff's credit reports. *Id.* ¶¶ 18–20.

Based on the above, Plaintiff brings one claim against Defendant under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et. seq.* Dkt. 1 ¶¶ 37–41. Specifically, Plaintiff asserts that Defendant violated § 1681s-2(b) by, *inter alia*, inaccurately representing that Plaintiff was responsible for at least thirteen past due Incare accounts, failing to properly investigate Plaintiff's May 2019 and January

---

[2] Plaintiff states that she submitted this dispute in late January 2021, but Defendant contends that the dispute was initiated in February 2021. Dkt. 21-1 ¶ 7. Whether that dispute was submitted in January 2021 or February 2021 is immaterial to the present analysis, so the Court will utilize the January 2021 date alleged in Plaintiff's Complaint.

3

2019 disputes, and failing to correct its records. *Id.* ¶ 38. Defendant now moves for summary judgment. Dkt. 21.

## LEGAL STANDARD

A district court should grant summary judgment only when it determines that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue of fact is "material" if it is a legal element of the claim that might affect the outcome of the case. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). An issue of fact is "genuine" if the record, in its entirety, could lead a rational trier of fact to find for the nonmovant. *Id.* The moving party bears the burden of demonstrating that no genuine issue of material fact exists. *Id.*

In deciding a motion for summary judgment, a court must resolve all ambiguities and draw all inferences in favor of the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004). Upon doing so, the court must determine whether a rational jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the inferences arising from undisputed facts, a court should deny summary judgment. *Allen*, 121 F.3d at 646.

## ANALYSIS

The FCRA requires entities that furnish information to consumer reporting agencies to investigate information disputed by a consumer. *See* 15 U.S.C. § 1681s-2(b). This duty to investigate disputed information is not triggered, however, until the furnisher receives notice of that dispute from a consumer reporting agency. *See id.* § 1681s-2(b)(1). Upon receiving notice from a consumer reporting agency that a consumer disputes information, a furnisher must "conduct an investigation with respect to the disputed information," "review all relevant information provided by the consumer reporting agency" in connection with the dispute, and "report the results of the investigation to the consumer reporting agency[.]" *Id.* If a furnisher finds that information disputed by a consumer is inaccurate, incomplete, or cannot be verified, the furnisher must modify, delete, or permanently block the reporting of that information. *Id.* Civil actions under the FCRA must be brought "not later than the earlier of" either (1) two years after the plaintiff discovered the violation or (2) five years after the date of the violation. *Id.* § 1681p.

Here, Defendant contends that it is entitled to summary judgment on Plaintiff's FCRA claim for several reasons. As a preliminary matter, Defendant contends that certain allegations made by Plaintiff are time-barred. Dkt. 21 at 13−14. Defendant next claims that it had no duty to investigate the information

5

disputed by Plaintiff in her letter sent to Defendant on May 18, 2019. *Id.* at 12−13. Regarding Plaintiff's May 8, 2019, and January 2021 disputes, Defendant avers that it satisfied its duty to investigate under the FCRA. *Id.* at 19−22. Defendant further contends that the disputed Incare accounts were accurate, as the accounts represent medical bills stemming from Plaintiff's 2015 hospital stay. *Id.* at 17−19. Consequently, Defendant avers that Plaintiff has failed to establish any actionable damages. *Id.* at 22−24. For the reasons set forth below, this Court finds that Defendant's Motion for Summary Judgment is due to be granted in part and denied in part.

**I.  Statute of Limitations**

As an initial matter, the parties agree that the FCRA's two-year statute of limitations applies in this case. *See* Dkt. 21 at 13−14; Dkt. 25 at 9−11. Though not explicitly alleged in her Complaint, Plaintiff admitted at her deposition that she first disputed the Incare accounts reported by Defendant to Experian in October 2017—about three-and-a-half years before she filed this suit. Dkt. 21-3 at 15. Defendant notes that several injuries claimed by Plaintiff in her Complaint, such as being denied employment in November 2017 due to her credit report,[3] stem solely from the October 2017 dispute. Dkt. 21 at 13−15.

The parties also agree that, under the majority approach followed by district

---

[3] Dkt. 21-3 at 22.

courts,[4] Plaintiff's allegations concerning her May 2019 and January 2021 disputes are *not* time-barred despite being based on the same Incare accounts Plaintiff initially disputed in October 2017. *See* Dkt. 25 at 10–11; Dkt. 32 at 2–3. The Court agrees, as the majority of district courts have adopted the position that "each notification of a consumer's dispute from a consumer reporting agency to a furnisher creates its own duties and corresponding limitations period[.]" *Milgram v. Chase Bank USA, N.A.*, 19-60929-CIV-SMITH/VALLE, 2020 WL 409546, at *4 (S.D. Fla. Jan. 25, 2020) (quoting *Thomas v. Wells Fargo Bank, N.A.*, No. 1:17-CV-3146-TWT-JSA, 2018 WL 3719589, at *7 (N.D. Ga. May 30, 2018)). Courts adopting this approach have noted that even under this interpretation of the FCRA's statute of limitations, furnishers can still only be held liable for violations and injuries that occurred within two years of the suit's filing. *See, e.g*, *Thomas*, 2018 WL 3719589, at *8.

Accordingly, the Court finds that any alleged violations or damages occurring prior to April 30, 2019—two years before Plaintiff filed this suit—are beyond the statute of limitations. While Plaintiff's allegations stemming from her October 2017 dispute are time-barred, her allegations pertaining to her May 2019 and January 2021 disputes remain actionable.

---

[4] *See Milgram v. Chase Bank USA, N.A.*, 19-60929-CIV-SMITH/VALLE, 2020 WL 409546, at *4 (S.D. Fla. Jan. 25, 2020) (collecting cases).

7

## II.  Duty to Investigate

Having determined that Plaintiff's allegations surrounding her May 2019 and January 2021 disputes are not time-barred, the Court next considers Defendant's assertion that it satisfied its duty to investigate these disputes under the FCRA. The Eleventh Circuit has explained that "reasonableness is an appropriate touchstone" when considering whether a furnisher has met its duty to investigate disputed information under § 1681s-2(b). *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1302 (11th Cir. 2016). The reasonableness of a furnisher's investigation depends, in part, on the quality of information available to the furnisher and the furnisher's status as an original creditor, collection agency, debt buyer, or down-the-line buyer. *Id.*

Concerning Plaintiff's letter submitted to Defendant on May 18, 2019, Defendant contends that it had no duty to investigate the information disputed in that letter. Dkt. 21 at 12−13. As previously noted, a furnisher's duty to investigate under the FCRA is triggered by the furnisher's receipt of notice of a dispute from a consumer reporting agency. 15 U.S.C. § 1681s-2(b)(1). A furnisher has no duty under the FCRA to investigate disputes received directly from consumers absent notice of that dispute from a consumer reporting agency. *See, e.g.*, *Green v. RBS Nat'l Bank*, 288 F. App'x 641, 642 (11th Cir. 2008); *Maitland v. Spectrum*, No. 3:17-cv-1232-J-20JBT, 2018 WL 6444923, at *1 (M.D. Fla. Oct. 18, 2018). Here,

8

Plaintiff asserts that she sent her May 18th dispute letter to both Defendant and Experian. However, Plaintiff failed to allege in her Complaint that Defendant received notice of the May 18th dispute from Experian or any other consumer reporting agency.

While a court may infer that a furnisher received such notice, *see Grant v. Direct Gen. Ins. Co.*, No. 1:17-CV-4205-TWT-JSA, 2018 WL 6362657, at *6 (N.D. Ga. Sept. 6, 2018),[5] the record before this Court does not permit that inference. Contrary to Plaintiff's contention, Dkt. 25 at 20, the record does not contain any information suggesting that Defendant received notice from a consumer reporting agency of Plaintiff's May 18th dispute letter. The only May 18th letter in the record was addressed directly to Defendant from Plaintiff. Dkt. 21-9 at 5. There is no indication that the letter was also sent to Experian. The Court notes that Experian's Automated Consumer Dispute Verification ("ACDV") Response records, which detail Plaintiff's disputes, contain no mention of any dispute submitted on May 18, 2019. *See* Dkt. 23-9.[6] The only May 2019 dispute these records show is Plaintiff's dispute submitted to Experian on May 8, 2019, in

---

[5] Notably, *Grant v. Direct Gen. Ins. Co.*, No. 1:17-CV-4205-TWT-JSA, 2018 WL 6362657 ((N.D. Ga. Sept. 6, 2018) is distinguishable from the present case in that the *Grant* court was analyzing a motion to dismiss a complaint filed by a pro se plaintiff. Here, Plaintiff is a represented party and facing a motion for summary judgment.
[6] While the ACDV Response Records were filed by terminated-party Experian as exhibits to its now-moot summary judgment motion, Dkt. 23, Plaintiff cites these ACDV Response Records in her response to Defendant's Motion for Summary Judgment. *See* Dkt. 25 at 4, 14, 19.

9

which she claimed that the Incare accounts were inaccurate and that the reporting of those accounts was a violation of HIPAA.[7] *Id.* at 15−27.

With no evidence that Defendant received notice from Experian of any dispute filed on May 18, 2019, Defendant had no duty to investigate the information disputed by Plaintiff in her May 18th letter sent directly to Defendant. Upon receiving a dispute directly from a consumer, a furnisher's duty under the FCRA is to inform the consumer reporting agency that the reported information is disputed. *See* 15 U.S.C. § 1681s-2(a)(3). The record demonstrates that, after receiving Plaintiff's May 18th letter, Defendant provided notice to Experian that the Incare accounts were disputed. Dkt. 21 at 13 n.20; Dkt. 21-5 at 3−15 (Experian's records showing that Defendant labeled the Incare accounts as "disputed" in late May). Defendant was not required to do more. Accordingly, Defendant is entitled to summary judgment on Plaintiff's claim as it pertains to the May 18th letter.

To the extent that Plaintiff's May 2019 allegations pertain to her aforementioned May 8th dispute, the Court finds that a genuine of issue of material fact remains as to whether Defendant satisfied its duty to investigate set forth in § 1681s-2(b). The record reflects that Experian provided notice of the May 8th

---

[7] The Court notes that, despite Plaintiff's contention in her May 8th dispute, a furnisher does not violate HIPAA by reporting to consumer reporting agencies certain personal information of a consumer pertaining to the collection of medical bills. *See* 45 C.F.R. § 164.501.

dispute to Defendant, indicating that Plaintiff "[c]laim[ed] inaccurate information" and "[d]id not provide [a] specific dispute." Dkt. 23-9 at 15−27. Experian's notice also relayed Plaintiff's comment asserting a HIPAA violation. *Id.* Experian asked Defendant to provide Plaintiff's complete identification and verify the account information. *Id.* Using Defendant's internal records, an employee of Defendant identified Plaintiff's demographic information and matched it to the information associated with the disputed accounts. Dkt. 21-2 at 8−9; Dkt. 21-6 at 3.

Whether a furnisher's actions amount to a reasonable investigation under § 1681s-2(b) is a question of fact "normally reserved for the factfinder." *Hinkle*, 827 F.3d at 1303. Though Defendant notes that it received limited information from Experian regarding the May 8th dispute, *see* Dkt. 21 at 19, the Eleventh Circuit has rejected "the proposition that a furnisher may truncate its investigation simply because the [consumer reporting agency] failed to exhaustively describe the dispute" in its notice to the furnisher. *Id.* at 1306. Instead, the Eleventh Circuit determined "that § 1681s-2b requires some degree of careful inquiry by furnishers[.]" *Id.* at 1303. Whether Defendant demonstrated that degree of careful inquiry when it verified Plaintiff's demographic and account information using only its internal records remains in question.

The Court likewise determines that genuine issues of material fact exist surrounding Plaintiff's January 2021 dispute. First, the Court finds that an issue

11

exists as to whether Plaintiff's January 2021 dispute concerned all thirteen Incare accounts or only two of the accounts. While Defendant contends that Plaintiff only disputed two of the Incare accounts at that time, *see* Dkt. 21-6, Plaintiff testified under oath at her deposition that she disputed all thirteen accounts. Dkt. 21-3 at 17−18. Second, the reasonableness of Defendant's investigation into Plaintiff's January 2021 dispute remains in question. According to Defendant, Experian sent notice that Plaintiff disputed two Incare accounts as "Not His/Hers" and instructed Defendant to provide Plaintiff's complete identification. Dkt. 21-1 ¶ 12; Dkt. 23-9 at 28−29. The parties agree that Defendant's employee then verified Plaintiff's demographic information using Defendant's internal records. Dkt. 21-2 at 8−9; Dkt. 25 at 14.

As with Defendant's investigation of Plaintiff's May 8th dispute, the Court cannot say with certainty that Defendant satisfied its duty to investigate Plaintiff's January 2021 dispute by simply verifying Plaintiff's demographic information through its internal records. The Court therefore denies Defendant's Motion for Summary Judgment as it pertains to the reasonableness of Defendant's investigations of Plaintiff's May 8, 2019, and January 2021 disputes.

### III.  Validity of the Accounts

Defendant also contends that the disputed Incare accounts were accurate, as Plaintiff incurred those debts after her thirty-two-day stay at St. Mary's Hospital in

2015. Defendant attempts to support this position by attaching to its motion the affidavit of an Incare employee, Raj Shah. Dkt. 21-14. Mr. Shah's affidavit incorporates two exhibits that he states are Incare's records showing the dates Plaintiff was treated at St. Mary's Hospital and the names of her providers. *Id.* at 3−5. Plaintiff asserts that because Defendant did not properly disclose Mr. Shah as a witness as required by Federal Rule of Civil Procedure 26, the Court should not consider his affidavit. Dkt. 25 at 6−7. Plaintiff also avers that the exhibits attached to Mr. Shah's affidavit do not constitute admissible business records under Federal Rule of Evidence 803(6). *Id.* at 7−8.

Pursuant to Federal Rule of Civil Procedure 37(c)(1), if a party does not identify a witness as required by Rule 26, "the party is not allowed to use . . . the witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." Defendant admits that it failed to disclose Mr. Shah as required by Rule 26, and it offers no substantial justification for this failure. Dkt. 32 at 5 n.3. While Defendant states that it will provide Plaintiff the opportunity to depose Mr. Shah, *id.*, Plaintiff did not have the opportunity to do so prior to the Court's consideration of the present motion.

Accordingly, the Court declines to consider Mr. Shah's affidavit that Defendant attached to its Motion for Summary Judgment, as Defendant's failure to disclose Mr. Shah was neither substantially justified nor harmless. *Liebman v.*

*Metro. Life Ins. Co.*, 13-cv-80535-MIDDLEBROOKS, 2016 WL 7971336, at *6 (S.D. Fla. Sept. 16, 2016) (striking declaration of undisclosed witness who was not deposed by opposing party); *See Kramer v. Gwinnett Cnty., Ga.*, 306 F. Supp. 2d 1219, 1224−25 (N.D. Ga. 2004) (striking affidavit of undisclosed witness), *aff'd*, 115 F. App'x 253 (11th Cir. 2004). Because the Court will not consider Mr. Shah's affidavit attached to Defendant's Motion for Summary Judgment, it need not assess the admissibility of the exhibits contained within that affidavit.

Apart from the above affidavit, the record contains little evidence concerning the accuracy of the Incare accounts. This evidence largely boils down to the conflicting statements found in Plaintiff's sworn deposition testimony and Defendant's interrogatory answers. *See* Dkt. 21-2 at 7; Dkt. 21-3 at 9−10. While Defendant may ultimately be correct that the disputed Incare accounts are valid, Defendant has not carried its burden at this stage to show that no genuine issue of material fact exists as to the accuracy of the accounts.

Given that the Court has determined that genuine issues of material fact exist concerning Plaintiff's May 8, 2019, and January 2021 disputes, as well as the accuracy of the disputed accounts, the Court need not address Defendant's final argument that Plaintiff has not established actionable damages.

## CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART** and **DENIES IN**

**PART** Defendant's Motion for Summary Judgment, Dkt. 21. Defendant's motion is granted to the extent that the Court finds (1) Plaintiff's allegations stemming from her October 2017 dispute are time-barred, and (2) Defendant had no duty to investigate the May 18th dispute letter sent directly to Defendant from Plaintiff. However, Defendant's motion is denied as it pertains to Plaintiff's May 8, 2019, and January 2021 disputes and the accuracy of the disputed accounts.

**DONE AND ORDERED** at Tampa, Florida, on May 16, 2022.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record